















JPP    10/8/04    15:12
3:02-CV-00473   NATIONAL METAL V. ALLIANT TECHSYSTEMS
*141*
*MEMFACTS.*

1    HULETT HARPER STEWART LLP
     DENNIS STEWART; SBN: 99152
2    BLAKE M. HARPER; SBN 115756
     STEPHANIE L. DIERINGER; SBN 221394
3    BRIDGET FOGARTY GRAMME, SBN: 231953
     550 West C Street, Suite 1600
4    San Diego, CA 92101
5    Telephone: (619) 338-1133
     Facsimile: (619) 338-1139
6

7    SULLIVAN, HILL, LEWIN, REZ & ENGEL
     DONALD G. REZ; SBN 082615
8    550 West C Street, Suite 1500
     San Diego, CA 92101-3540
9    Telephone: (619) 233-4100
     Facsimile: (619) 231-4372
10

11   Attorneys for Plaintiffs

12   [Additional counsel on signature page]

13                 UNITED STATES DISTRICT COURT

14          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

15   NATIONAL METAL TECHNOLOGIES,        CASE NO. 02 CV 00473 JAH (BLM)
     INC., and NATIONAL
16   MANUFACTURING TECHNOLOGIES,
     INC.,
17                                        **PLAINTIFFS' MEMORANDUM OF**
                   Plaintiffs,            **CONTENTIONS OF FACT AND LAW**
18
     vs.
19
     ALLIANT TECHSYSTEMS, INC.,
20   ALLIANT AMMUNITION POWDER
     COMPANY, LLC., ALLIANT
21   AMMUNITION SYSTEMS, LLC,
     ALLIANT LAKE CITY SMALL
22   CALIBER AMMUNITION COMPANY
     LLC, and ALLIANT DEFENSE, LLC,       PRE-TRIAL HEARING DATE: October 28, 2004
23                                        TIME:        3:00 p.m.
                   Defendants.            JUDGE:    Hon. John A. Houston
24

25

26

27

28

141

## TABLE OF CONTENTS

I.      OVERVIEW..................................................................................................1

II.     CONTENTIONS OF FACT  .....................................................................1

III.    CONTENTIONS OF LAW   ....................................................................19

        A.      Breach of Contract  .......................................................................19

        B.      Antitrust Claims  ...........................................................................26

        C.      Intentional Interference with Prospective Economic Advantage .........................30

IV.     ABANDONED ISSUES ...... ....................................................................31

V.      LIST OF WITNESSES .........................................................................31

VI.     LIST OF EXHIBITS ............................................................................32

i

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
   948 F.2d 536 (9th Cir. 1991) .......................................................................... 26

4

5

*American Ad Mgmt., Inc. v. General Tel. Co.,*
   190 F.3d 1051 (9th Cir. 1999) ........................................................................ 27

6

*Anaheim v. Southern California Edison Co.,*
   955 F.2d 1373 (9th Cir. 1992) ........................................................................ 28

7

8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
   472 U.S. 585 (1985)......................................................................................... 26

9

*Bank of the West v. Superior Court,*
   2 Cal. 4th 1254 (1992) .................................................................................... 20

10

11

*Bigelow v. RKO Radio Pictures, Inc.,*
   327 U.S. 251 (1946).......................................................................................... 29

12

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.,*
   226 Cal. App. 3d 442 (1990) .......................................................................... 24

13

14

*Brown Shoe Co. v. United States,*
   370 U.S. 294 (1962).......................................................................................... 26

15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977).......................................................................................... 28

16

17

*C. Pappas Co. v. E. & J. Gallo Winery,*
   610 F. Supp. 662 (E. D. Cal. 1985)........................................................... 21, i

18

*C.R. Bard, Inc. v. Medical Elec. Corp.,*
   529 F. Supp. 1382 (D. Mass. 1982) ............................................................... 22

19

20

*Cal. Lettuce Growers v. Union Sugar Co.,*
   45 Cal. 2d 474 (1955) ..................................................................................... 21

21

*California v. Chevron Corp.,*
   872 F.2d 1410 (9th Cir. 1989) ........................................................................ 21

22

23

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690 (1962).......................................................................................... 28

24

*Cost Mgmt. Servs. v. Washington Natural Gas Co.,*
   99 F.3d 937 (9th Cir. 1996) ............................................................................ 26

25

26

*Dolphin Tours Inc. v. Pacifico Creative Serv., Inc.,*
   773 F.2d 1506 (9th Cir. 1985) ................................................................. 28, 29

27

*Dravo Corp. v. Liberty Mut. Ins. Co.,*
   164 F.R.D. 70 (D. Neb. 1995)......................................................................... 31

28

*E.F. Hutton & Co. v. City Nat'l Bank,*
    149 Cal. App. 3d 60 (1983) ................................................................. 20

*Eastman Kodak Co. v. Southern Photo Materials Co.,*
    273 U.S. 359 (1927) .......................................................................... 29

*Exxon Corp. v. Superior Court,*
    51 Cal. App. 4th 1672 (1997) ............................................................ 30

*FTC v. Alliant Techsystems, Inc.,*
    808 F. Supp. 9 (D.D.C. 1992) ........................................................... 29

*FTC v. Warner Communications, Inc.,*
    742 F.2d 1156 (9th Cir. 1984) ...................................................... 29, 30

*Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,*
    227 Cal. App. 2d 675 (1964) ............................................................. 31

*Fishman v. Estate of Wirtz,*
    807 F.2d 520 (7th Cir. 1986) ............................................................. 28

*Gianelli Distrib. Co. v. Beck & Co.,*
    172 Cal. App. 3d 1020 (1985) ........................................................... 20

*Greenville Publ'g Co. v. Daily Reflector, Inc.,*
    496 F.2d 391 (4th Cir. 1974) ............................................................. 28

*Greyhound Computer Corp. v. IBM Corp.,*
    559 F.2d 488 (9th Cir. 1977) ............................................................. 27

*Helix Milling Co. v. Terminal Flour Mills Co.,*
    523 F.2d 1317 (9th Cir. 1975) ........................................................... 28

*Hernandez v. Badger Constr. Equip. Co.,*
    28 Cal. App. 4th 1791 (1994) ............................................................ 20

*Image Tech. Servs. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ...................................................... 26, 28

*International Boxing Club v. United States,*
    358 U.S. 252 (1959) .......................................................................... 27

*J.Truett Payne Co. v. Chrysler Motors Corp.,*
    451 U.S. 557 (1981).......................................................................... 29

*Kaiser Trading Co. v. Associated Metals & Minerals Corp.,*
    321 F. Supp. 923 (N.D. Cal. 1970) ................................................... 21

*Kendall v. Ernest Pestana, Inc.,*
    40 Cal. 3d 488 (1985) ....................................................................... 21

*Knutson v. Daily Review, Inc.,*
    548 F.2d 795 (9th Cir. 1976) ............................................................. 29

iii

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal 4th 1134 (2003) ................................................................................................ 30

*Los Angeles Mem'l Coliseum Comm'n v. National Football League,*
   791 F.2d 1356 (9th Cir. 1986) .................................................................................... 29

*Lucas Automotive Eng'g, Inc. v. Bridgestone/ Firestone, Inc.,*
   140 F.3d 1228 (9th Cir. 1998) .................................................................................... 29

*M/A-Com, Inc. v. C.W. Swift & Assocs., Inc.,*
   No. CV 94-2713-GHK, 1995 U.S. Dist. LEXIS 22321 (C.D. Cal., Sept. 27, 1995),
   *aff'd,* 110 F.3d 68 (9th Cir. 1997) ............................................................................. 23

*Medical Operations Mgmt. v. National Health Labs.,*
   176 Cal. App. 3d 886 (1986) ...................................................................................... 20

*MetroNet Serv. Corp. v. Qwest Corp.,*
   Civ. No. 01-35406, 2004 U.S. App. LEXIS 20107 (9th Cir. Sept. 24, 2004) ......................... 26

*Morey v. Vannucci,*
   64 Cal. App. 4th 904 (1998) ...................................................................................... 20

*Movie 1 & 2, United Artists Communications, Inc.,*
   909 F.2d 1245 (9th Cir. 1990) .................................................................................... 27

*New West Fruit Corp. v. Coastal Berry Corp.,*
   1 Cal. App. 4th 92 (1991) .......................................................................................... 19

*Oahu Gas Serv., Inc. v. Pacific Resources, Inc.,*
   838 F.2d 360 (9th Cir. 1988) ............................................................................... 26, 27

*Otter Tail Power Co. v. United States,*
   410 U.S. 366 (1973)................................................................................................... 28

*PMC, Inc. v. Saban Entm't, Inc.,*
   45 Cal. App. 4th 579 (1996) ...................................................................................... 30

*Pac. W. Resin Co. v. Condux Pipe Sys., Inc.,*
   771 F. Supp. 313 (D. Or. 1991) ................................................................................. 22

*Rebel Oil Co. v. Atlantic Richfield Co.,*
   133 F.R.D. 41 (D. Nev. 1990)................................................................................ 27, 28

*Resolution Trust Corp. v. S. Union Co.,*
   985 F.2d 196 (5th Cir. 1993) ...................................................................................... 31

*Settimo Associates v. Environ Sys., Inc.,*
   14 Cal. App. 4th 842 (1993) ...................................................................................... 30

*SmileCare Dental Group v. Delta Dental Plan,*
   88 F.3d 780 (9th Cir. 1996) ....................................................................................... 26

*Spectrum Sports v. McQuillan,*
   506 U.S. 447 (1993)................................................................................................... 26

*Story Parchment, Co. v. Paterson Parchment Paper Co.,*
   282 U.S 555 (1931)...................................................................................... 29

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*
   676 F.2d 1291 (9th Cir. 1982) .................................................................. 27

*United States Football League v. National Football League,*
   887 F.2d 408 (2d Cir. 1989)...................................................................... 29

*United States v. E.I. Dupont de Nemours & Co.,*
   351 U.S. 377 (1956)............................................................................ 26, 27

*United States v. Grinnell Corp.,*
   384 U.S. 563 (1966).................................................................................. 26

*United States v. Microsoft Corp.,*
   253 F.3d 34 (D.C. Cir. 2001).................................................................... 27

*Wallis v. Farmers Group, Inc.,*
   220 Cal. App. 3d 718 (1990) .................................................................... 24

*William Inglis & Sons Baking Co. v. Continental Baking Co.,*
   942 F.2d 1332 (9th Cir. 1991) .................................................................. 28

*Youst v. Longo,*
   43 Cal. 3d 64 (1987) ................................................................................ 31

*Zenith Radio Corp. v. Hazeltine Research,*
   395 U.S. 100 (1969).................................................................................. 29

## STATUTES, RULES & REGULATIONS

15 U.S.C.
   § 2 .................................................................................................. 26, 27, 28
   § 15(a)............................................................................................... 28, 29
   § 18.......................................................................................................... 29

California Civil Code
   § 1511................................................................................................ 23, 24
   § 1512...................................................................................................... 23
   § 1635...................................................................................................... 20
   § 1656...................................................................................................... 20

California Code of Civil Procedure
   § 1859...................................................................................................... 20
   § 1860...................................................................................................... 20
   § 1861...................................................................................................... 20
   § 1864...................................................................................................... 20

California Uniform Commercial Code
   § 1106...................................................................................................... 25
   § 1201(3).................................................................................................. 19
   § 1203...................................................................................................... 20
   § 1205(1).................................................................................................. 19
   § 1205(2).................................................................................................. 20

§ 1205(3)...............................................................................................................19
§ 2103(b)..............................................................................................................20
§ 2106(2)..............................................................................................................21
§ 2208(1)..............................................................................................................19
§ 2301..................................................................................................................21
§ 2509...........................................................................................................21, 23, 24
§ 2602..................................................................................................................22
§ 2606..................................................................................................................22
§ 2708..............................................................................................................24, 25
§ 2708(1)..............................................................................................................25
§ 2708(2)..............................................................................................................25
§ 2709..................................................................................................................25
§ 2710..................................................................................................................25
§ 2717   ...............................................................................................................22

## SECONDARY AUTHORITIES

Department of Justice Antitrust Horizontal Merger Guidelines (1992)
§ 1.0....................................................................................................................27

1    Plaintiffs National Metal Technologies, Inc. and National Manufacturing Technologies,

2    Inc. hereby file their Memorandum of Contentions of Fact and Law pursuant to the United States

3    District Court, Southern District of California Local Rule 16.1(f)(2).

4    **I.      OVERVIEW**

5        1.    This is an antitrust, breach of contract and interference with prospective economic

6    advantage lawsuit brought by National Metal Technologies, Inc. ("NMT") and its parent National

7    Manufacturing Technologies, Inc. ("NMTI") against the related entities Alliant Techsystems, Inc.,

8    Alliant Ammunition Powder Company, LLC, Alliant Ammunition Systems, LLC, Alliant Lake

9    City Small Caliber Ammunition Company LLC and Alliant Defense, LLC ("ATK").  NMT was a

10   manufacturer of ammunition links.  ATK was, and is, a manufacturer of linked ammunition, which

11   utilizes ammunition links, and of the links themselves.

12   **II.     CONTENTIONS OF FACT**

13   **Background**

14       2.    There are two markets which are relevant in this case.  The market for linked

15   ammunition and the market for ammunition links.   Ammunition links are inputs in the

16   manufacture of linked ammunition.

17       3.    Prior to 1998 there were three U.S. competitors of note in the linked ammunition

18   industry, ATK, General Dynamics Ordnance and Tactical Systems ("GDOTS" formerly known as

19   Primex Technologies) and Olin Winchester ("Olin") from whom the United States government,

20   primarily through the Army, procured from these manufacturers linked ammunition for use by the

21   military branches and law enforcement agencies.  The Army also procured two related products:

22   edge guards, metal strips designed to fit over the ends of boxes containing ammunition; and ammo

23   strips, metal devices used for storing and holding certain types of rounds.

24       4.    To manufacture linked ammunition, linked ammunition manufacturers procured

25   ammunition links, metal clips which hold together rounds of small and medium caliber

26   ammunition, directly from links manufacturers.

27

28

1

5.      In 1998, ammunition links were manufactured mainly by two companies, Valentec Wells ("Valentec") and Greene International West ("GIW").  An ATK affiliate, Ferrulmatic, had also been engaged in the manufacture and sale of ammunition links.

6.      In September 1998, the Army sought bids for multi-year small-caliber and a multi-year medium-caliber linked ammunition contracts.  The small-caliber linked ammunition contract was for ten years and the multi-year medium-caliber linked ammunition contract was for five years.  The primary U.S. bidders for the multi-year contracts were ATK, Olin and GDOTS.  The presence of multiple bidders on the Army's multiyear ammunition contracts with access to competitive bids for the supply of competitively set ammunition links prices resulted in lower, competitively set linked ammunition prices.

7.      On December 18, 1998, while resolution of the bidding on these contracts was pending, NMT entered the links manufacturing industry by purchasing GIW's link manufacturing assets.

8.      Olin, which then held the small-caliber linked ammunition contract, contracted with NMT to produce the M-9 link, one of the links used in the manufacture of one of the calibers of linked ammunition procured by the Army.  Olin had experienced quality problems with Valentec's small-caliber links.

9.      GDOTS (Primex) and ATK, both of which then held medium-caliber linked ammunition contracts, contracted with NMT to produce the M-28 link, the link used in the manufacture of medium-caliber linked ammunition.  In addition, GDOTS contracted with NMT to manufacture medium-caliber M-14 links.  NMT also obtained contracts with SNC, a Canadian linked ammunition manufacturing company, to supply M-28 links.

10.     In July and August 1999, ATK successfully outbid GDOTS for the majority of US Army requirements for medium-caliber ammunition.  That is, while GDOTS got 55% of the M-28 links requirement, ATK's 45% share of the M-28 links requirement, together with 100% of both ammo strips and edgeguards requirements, constituted a majority of the contract.  ATK also successfully outbid Olin for a $1 billion exclusive manufacturing agreement for 100% of the U.S. military requirements for small-caliber ammunition.  Taking into consideration recent military

2

1   increases in demand for ammunition, the current value of this contract would be approximately
2   $3 billion.

3       11.   The small-caliber contract carried with it the right to occupy and run the
4   government-owned ammunition manufacturing plant located in Lake City, Missouri.   ATK's
5   award of the contract meant that it would take over the operation of the Lake City, Missouri plant
6   from Olin.   The contract awards were bitterly challenged by Olin.   Olin first protested to the U.S.
7   General Accounting Office, which decided in favor of ATK on November 15, 1999 and then in a
8   lawsuit filed November 23, 1999, which ultimately resulted in a February 2000 decision denying
9   Olin's request for a preliminary injunction.

10       12.   In late August 1999, seeking to supply small-caliber links and medium-caliber
11   links to ATK under the Army contracts, NMT key employees and officers met with ATK
12   executives and made a detailed presentation about the company and its link manufacturing
13   capabilities.

14       13.   NMT successfully obtained ATK's medium-caliber business under the new
15   multiyear contract.   ATK let its M-28 links requirements to NMT because of NMT's continuing
16   flawless performance and the low competitive prices it had bid to supply the links to ATK.

17       14.   A September 22, 1999 letter written by ATK's buyer, Marvetta Dooley to NMT's
18   Jeff Tardiff, is one of the documents evidencing the written agreement that existed between NMT
19   and ATK to supply ATK's requirements under the multi-year contract for the contract period.

20       15.   In bidding to supply links for ATK's ten year contract for small-caliber linked
21   ammunition, NMT had two competitors: Valentec and ATK itself.   ATK had link manufacturing
22   capability and had been a manufacturer and seller of links through its Ferrulmatic division.
23   Among others, Ferrulmatic (ATK) had manufactured and sold links, in competition with Valentec,
24   to American Ordnance.   Ferrulmatic's link manufacturing assets were still retained by ATK in its
25   New Brighton facility.   Thus, in addition to being the sole supplier of small-caliber linked
26   ammunition to the Army for the years 1999 through 2008 and one of two primary suppliers of
27   medium-caliber linked ammunition to the Army for the years 1999 through 2004, ATK was also a
28   horizontal competitor of NMT and Valentec in the links market.

3

16.     Valentec, NMT and ATK's New Brighton facility all bid to supply ATK the small-caliber links it needed to fulfill its multi-year linked ammunition contract with the Army. NMT's bid was considerably lower than Valentec's bid. NMT outbid ATK by 58%. ATK's own buyer described ATK's bid as well outside "the competitive range."

17.     In late 1999, Valentec protested the award of the small-caliber links contract to NMT. Valentec exerted political pressure within ATK to reverse its decision to award the contract to NMT.

18.     In December 1999, ATK re-negotiated NMT's prices to secure an additional price concession. NMT agreed to give a price concession of 5% on the previously awarded contract for medium-caliber M-28 links, ammo strips and edge guards in exchange for ATK's commitment to purchase from NMT its entire M-28 links, edge guard and ammo strip requirements in addition to the requirements on its five year contract with the Army, and all its small-caliber requirements under the small-caliber linked ammunition contract.

19.     The parties' December 17, 1999 written agreement and purchase order for small-caliber ammunition links set forth the provision that NMT was to supply all of ATK's small-caliber links requirements for the contract period.  The agreement also memorialized the 5% negotiated price reduction on the medium-caliber links, ammunition strips and edge guards. Other documents and testamentary admissions further evidence the terms of the contracts.  The small-caliber links and medium-caliber links/ammo strip/edge guard contracts were entered into by NMT with two separate ATK entities; the small-caliber contract was with Alliant Techsystems.  The medium-caliber, ammo strip and edge guard contract was with Alliant Ammunition and Powder Co.

20.     Thus, ATK contracted with NMT for: 1) the exclusive supply of small-caliber (M-9, M-13 and M-27) links; 2) the exclusive supply of medium-caliber M-28 links; 3) the exclusive supply of ATK's Edge Guard requirements; and 4) the exclusive supply of ATK's ammo strip requirements.

4

**ATK Willfully Acquired Monopoly Power in the Ammunition Links Market**

21.     The U.S. Army contract constituted well over 90% of the linked ammunition sold in the United States.  As a result of the award of contracts for small- and medium-caliber linked ammunition, ATK commanded approximately 75% of the market share in linked ammunition. This dominant position as a manufacturer of linked ammunition conferred on ATK monopsony power as a purchaser of ammunition links and the ability to wield that power over links suppliers in the ammunition links market.

22.     While NMT was still a fully operational company in the links market, ATK was an actual or potential competitor of NMT.  It was also an actual or potential competitor of Valentec in the ammunition links market.

23.     To accomplish its monopoly in the ammunition links market, and gain control of access to and the prices of ammunition links to its competitors in the linked ammunition market, ATK used its monopsony power to engage in wrongful conduct which drove NMT out of the business. It then acquired the only other competitor, Valentec.

24.     In December 2000, ATK negotiated for the purchase of NMT and agreed on a range of $10-$13 million for the valuation of the assets.  The acquisition was never consummated.

25.     NMT filed for protection under Chapter 11 of the Bankruptcy Code on September 18, 2001.  At the time of this filing, NMT retained its core link manufacturing assets. Those assets were subsequently sold off.  Certain of its key assets were actually purchased by ATK.

26.     ATK's motive and intent played leading roles in its acquisition of monopoly power in the market for ammunition links and the wrongful conduct it engaged in order to acquire that monopoly.  ATK sought and acquired a monopoly in the links market so that it could control an essential component in the supply chain for linked ammunition.  It is consistent with its broader strategy of controlling key components in ammunition and ammunition related markets so as to be able to realize monopoly profits at the expense of the government and ultimately the taxpayer. Upon the closing of the acquisition of Valentec, an ATK executive sent out an internal congratulatory e-mail affirming that "this was a strategic acquisition that puts ATK in control of

5

1   another key component in the ammunition supply chain." Earlier, another ATK executive had

2   declared that it was his goal to be "the king of links."

3   **ATK Used Its Monopsony Power to Engage in Wrongful Conduct by Breaching Contracts
4   with NMT**

5       27.   ATK breached its requirements contracts with NMT by engaging in a course of

6   conduct which was designed to, and had the effect of, frustrating NMT's good faith efforts to

7   perform on the contracts.

8       28.   ATK's course of conduct which breached its small-caliber ammunition link

9   contract with NMT included interfering with NMT's ability to perform on the contract by:

10  1) unreasonably delaying in issuing purchase orders; 2) interfering with NMT's subcontracting

11  relationships with Valentec; 3) interfering with NMT's ability to timely obtain steel for use in the

12  contract; 4) wrongfully withholding First Article Approval on the M-13 and M-27 links,

13  wrongfully rejecting parts that complied with contractual requirements; 5) wrongfully attempting

14  to unilaterally impose dimensional changes on the M-13 and M-27 links, 6) wrongfully rejecting

15  conforming M-9, M-13, and M-27 links; 7) wrongfully deviating from the parties' practice of

16  sharing the risks on steel purchases by withholding a steel guarantee; and 8) withholding payment

17  on delivered product as well as stopping payment on a check issued for a large shipment of links

18  which had been received over a month prior.

19      29.   In addition, ATK breached both the small-caliber and medium-caliber

20  requirements contracts by conspiring with Valentec to deprive NMT of the benefits of its contracts

21  with NMT and issuing purchase orders directly to Valentec for links requirements it had

22  contracted to purchase from NMT and interfering with NMT's attempted acquisition of Valentec.

23      30.   Lost profits damages on its breach of contract claims are approximately $19.3

24  million.  The breach of contract claims are eligible for the award of prejudgment interest; with

25  prejudgment interest, the recoverable damages on the breach of contract claims totals

26  approximately $20 million.  These figures are taken from the damages report of NMT's expert,

27  Dr. James T. McClave.

28

**ATK Breaches Its Small-Caliber Contract with NMT by Unreasonably Delaying in Issuing Purchase Orders, Interfering with NMT's Subcontracting Efforts with Valentec and Interfering with NMT's Ability to Timely Obtain Steel for Use in the Contract**

31.     The first scheduled delivery date under the small-caliber contract was March 15, 2000.

32.     In January 1999, ATK sent teams of people out to NMT's plant to assess its capability to perform on the contracts.  The ATK personnel, after inspecting all aspects of NMT's operations, unanimously concluded that NMT was well capable of making and delivering the parts, subject to steel availability.

33.     The steel required to manufacture these links is a specialty cold-rolled steel which, because of acquisition and processing, requires long lead times.  An issue discussed and known to all parties during late 1999 was the impossibility of NMT meeting the delivery schedules described in the small-caliber links contract because of two issues related to the procurement of this specialty steel.

34.     Olin's challenge of the award of the small-caliber linked ammunition contract to ATK delayed ATK's award of the links contract to NMT, rendering it imprudent for NMT to order the steel necessary to begin performance under the contract.

35.     A worldwide shortage of steel resulted in steel suppliers informing NMT that deliveries could not occur, at the earliest, until 14 weeks after receipt of an order.

36.     Both parties mutually acknowledged and accepted the impossibility of NMT meeting the earliest delivery dates under the contract with parts it would fabricate because of the inability to timely acquire steel.  In fact, the issue of steel availability was so important, NMT and ATK had specifically incorporated into the small-caliber contract the contingency of steel availability by attaching Jeff Tardiff's November 24, 1999 letter to ATK describing the steel issue and lead times to the purchase order.

37.     In its attempts to meet the delivery dates under the contract, NMT exhausted all other reasonable avenues to obtain quality steel as quickly as possible and explored and attempted to implement other options.

7

38.     Valentec, which had been Olin's supplier of M-27 and M-13 links, had an existing long-term relationship with steel suppliers, and had in the pipeline quantities of specialty steel which it could obtain well in advance of NMT.  NMT thus opened talks aimed at subcontracting with Valentec for the M-13 and M-27 links, as well as potentially acquiring Valentec's links business.  Subcontracting with Valentec would have permitted NMT to meet the delivery dates called out in the small-caliber contract.

39.     NMT, with ATK's full knowledge, immediately sought to contract with Valentec for the manufacture of the links which it had contracted to purchase from NMT.

40.     Unbeknownst to NMT, ATK went around NMT, broke its exclusive supply contract with NMT and itself contracted with Valentec for links it was required to procure from NMT.  ATK's direct contracting with Valentec had two immediate effects.  It precluded NMT from performing on its contract with ATK by acquiring parts from Valentec and it further exacerbated the delay in NMT obtaining steel. Had ATK not interfered with NMT's efforts to subcontract with Valentec, NMT could have timely performed under the links contract, notwithstanding the steel supply issue.

41.     On February 10, 2000, ATK declared NMT to be in default under its small-caliber links contract with ATK.  It did so notwithstanding the fact that no deliveries were due from NMT for another six weeks.

**ATK Breached Its Contract with NMT Wrongfully Withholding First Article Approval on M-27 Links and Attempting to Impose Extra-Contractual Requirements**

42.     The contracts between ATK and NMT contained certain provisions material to the case.  First, they incorporated specifications peculiar to these military contracts (widely known as "milspecs") which, among other things, required the vendor to produce acceptable "First Article" or sample quantities of the parts before proceeding to full production and shipment.  These milspecs also required specified in-process and post-production testing and certifications by the vendor of the results of such testing.  And finally, the contracts also specified, in highly detailed technical drawings, the required dimensions and characteristics of the parts.

8

43. On May 2 and 3, 2000, ATK visited NMT to perform First Article inspection testing on M-27 links. These First Article tests are spelled out in the milspecs incorporated into the contract and consist of a wide array of dimensional, in-process and functional tests. The links passed all First Article tests except the ballistics (firing) test which needed to be performed at ATK's facility.

44. On May 9, 2000, NMT visited ATK to witness ballistics tests which the NMT parts passed. At that time, ATK also loaded the NMT links into its ammunition linking machine and experienced difficulties in loading the links.

45. Performance in the loading machine is nowhere specified in the contract or the milspecs as a condition of performance. NMT's obligation was to make a part that met the dimensional specifications of the drawings, and which passed prescribed First Article tests, which it did.

46. ATK knew that there was a substantial likelihood that M-27 links which had been manufactured by Valentec and were in use at the time were not being manufactured in accordance with the tolerances and measurements specified in the contract drawings. Moreover, ATK knew that it was likely that links which conformed in all respects to the applicable drawings were not easily usable in their linked ammunition manufacturing processes. They did not inform NMT of this "tighter tolerance" issue. To the extent ATK wanted or needed NMT to manufacture the link to tighter tolerances or different dimensions than indicated on the contract drawings, ATK was obliged to seek a modification of the contract to so provide. Such a tighter tolerance issued existed with respect to the M-9 link which NMT originally manufactured for Olin. This dimension tolerance was specifically called out in the contract.

47. ATK took the position that NMT's links needed to be modified and on that basis, refused to accept the NMT links. Thus, ATK rejected goods conforming to contract specifications and at the same time, breached its obligation to not unreasonably withhold First Article Approval.

48. ATK's request for modification of parts manufactured to contract specifications was a unilateral imposition of a modification of the contract and an imposition of extra-contractual terms.

9

49.     During June and July, NMT endeavored to solve the loading issue, attempting to "benchmark" (*i.e.* match dimension for dimension) its links to the Valentec links for more "friendly" loading.  Any and all attempts to modify the link according to ATK's wishes excused NMT's "non-performance."

50.     The process of benchmarking revealed that, in fact, the Valentec links which ATK was using were either out of spec with respect to certain dimensions or were being manufactured to tighter specifications within tolerances shown on the contract drawings for the part.

51.     The part drawings which were incorporated into the contract required the part to be manufactured in some cases to a specific dimension or, in other cases to fall within a certain range of measurement.  Where a range was called out, standard manufacturing processes dictated that the fabricator make the part as close to the median as possible.  In instances where it was important that a dimension fall somewhere specific within an otherwise allowable range that requirement had to be specifically called out in the contract.

52.     Millions of the Valentec links procured by ATK in violation of its contract with NMT were processed through ATK on a "skip-lot" abbreviated testing regime which consisted of samples from roughly every fourth lot of links being test-fired only.  No dimensional testing of the links was being done or had been done by ATK.

53.     NMT, with considerable effort, modified its link to accommodate these new demands and First Article approval was belatedly accorded on July 18, 2000.

**ATK Breached Its Contract with NMT by Wrongfully Withholding First Article Approval on M-13 Links**

54.     The second small-caliber link which had to receive First Article approval was the M-13.

55.     NMT requested that the M-13 link be dimensionally tested in order to avoid a repeat of the problems with the M-27 link, *i.e.*, the imposition by ATK of extra-contractual terms, or dimensions outside those specified in the drawings.  As with the M-27 link, ATK knew there was a problem with the ability to make the part in accordance with the drawing and failed to

10

1  inform NMT of that fact.  NMT's concerns were met with a response of "make the part to the
2  specifications in the drawing."

3        56.    NMT manufactured the links accordingly and they passed all the required tests at
4  NMT, only to be shipped off to ATK where they were rejected on one ground or another.  ATK
5  then refused to grant First Article Approval of the M-13 links.

6        57.    Thus, as with the M-27 links, ATK's rejection of NMT's M-13 links was a
7  rejection of goods conforming to contract specifications and a breach of its obligation to not
8  unreasonably withhold First Article Approval.

9  **ATK Breached Its Contract Wrongfully Rejecting NMT M-9 Links**

10       58.    Up to June of 2000, NMT had satisfactorily produced M-9 links (the third small-
11  caliber link) for ATK.  NMT had also successfully manufactured this link for Olin, without a
12  single rejection.  In about June 2000, ATK began rejecting large quantities of NMT M-9 links for
13  technical defects and characteristics that ATK, in previous inspections, had routinely ignored after
14  functional testing revealed the links to be acceptable.  Indeed, unlike NMT which manufactured
15  the M-9 link without complaint for Olin, when ATK began manufacturing M-9 links for Olin in
16  2002-03, it produced numerous lots of M-9 links which Olin had to reject for quality problems.

17       59.    Throughout 2000, ATK broke its contract with NMT by purchasing M-27, M-13
18  and M-9 links which it was required to purchase from NMT.  Unlike the stringent regime of First
19  Article and acceptance criteria and inspection procedures which it imposed on NMT, ATK
20  accepted and used Valentec parts without First Article Approvals by it, largely without inspection
21  and knowing that the Valentec parts were not being manufactured according to the specifications
22  required under the contract. On at least one occasion, an ATK inspector who noted quality
23  (loading) problems even under the greatly reduced inspection regime ATK was employing with
24  respect to Valentec links, was instructed to ignore the defects and to pass the links.

25

26

27

28

11

**ATK Breached Its Contract by Interfering with NMT's Ability to Timely Obtain Steel for Its Use in the Contract**

60.     As was common in the industry, NMT's steel supplier required that ATK undertake to purchase any steel which was ordered by NMT but, for whatever reason was not delivered to NMT.

61.     ATK had issued several such guarantees to NMT's steel supplier during 2000 and the issuance of these guarantees had become a course of performance between ATK and NMT which enabled NMT to obtain the steel needed to manufacture ATK's links.

62.     In early November 2000, ATK unilaterally changed its prior practice and informed NMT and its steel supplier that it would no longer issue any guarantees.  This substantially impeded NMT's ability to perform its contract with NMT.

63.     On or about November 28, 2000, NMT's steel supplier, Rolled Steel Products advised NMT that unless it received further written guarantees immediately from ATK, it would cancel NMT steel orders.

**ATK Breached Its Contract by Contracting with Valentec for Links**

64.     On February 3, 2000, six weeks before NMT was required to deliver its first link, ATK issued a purchase order to Valentec for links it was required to purchase from NMT.

65.     In the fall of 2000, ATK again issued purchase orders for M-9, M-13, and M-27 links requirements, which it had contracted to purchase from NMT.

66.     ATK's contracting with Valentec interfered with NMT's efforts to secure parts from Valentec for fulfillment of its contract with ATK.

67.     Valentec agreed to supply the small-caliber links to ATK, so long as it gained ATK's assurance that it, and not NMT, would be ATK's long-term supplier.

68.     In addition, in early to mid-November 2000 ATK formally asked Valentec to quote on its M-28 medium-caliber requirements.  This occurred before there was even a colorable issue with respect to NMT's performance on the medium-caliber contract.  Throughout 1999 and 2000, NMT had provided millions of medium-caliber links to ATK without complaint and had earned the highest contractor rating possible at ATK.

12

69.     Thus, by mid-November, 2000, ATK had broken and repudiated both the small-caliber and medium-caliber contracts with NMT.

70.     On March 23 and 26, 2001 ATK formally terminated its medium-caliber edge guard and ammo strip contracts with NMT.

71.     On May 7, 2001 ATK formally terminated NMT's small-caliber contract.

**ATK Broke Its Contracts with NMT by Withholding Payment on Delivered Product And Stopping Payment on a Check for Received Goods**

72.     Throughout 2000, NMT had been manufacturing and delivering medium-caliber M-28 links both to ATK and to Primex.  It shipped approximately four million M-28 links with no complaints from either the Army or ATK.  This included the most recent shipment of M-28 links, the first half of Lot 68, shipped in mid-October 2000, which was destined for a co-production contract ATK had with the government of Turkey.  ATK accepted the first half of Lot 68, and had directed payment for those links to NMT.

73.     On November 17, 2000, agents of several federal law enforcement agencies arrived at NMT's premises and executed a search warrant.  The execution of the warrant was precipitated by a false report of quality issues made by two disgruntled NMT employees to the Department of Defense.  The particular employee who made the false report to the government was upset with management because of an alleged failure to live up to assurances of advancement within NMT.  At no time prior to the search did this employee communicate any of his alleged concerns to anyone in management.  At no time prior to the search did government officials contact the company to inquire into the validity of the allegations.

74.     This investigation resulted in no presentation to any grand jury nor any other further significant investigative effort.  Nor were any charges ever filed.  The alleged quality issue related to a single shipment of M-28 links, the second half of Lot 68.  Most probative of the lack of merit in the disgruntled emoloyees' allegations is the fact that every M-28 link which NMT had manufactured, including the questioned lot, the second half of Lot 68, was ultimately purchased by ATK and incorporated into linked ammunition which was sold to the government.

13

75.    Although there existed no merit in the allegations made against NMT, ATK used the execution of the search warrant to stop payment on a large check for product already shipped and received, and accepted by ATK (the first half of Lot 68) as well as withholding payment for additional product shipped, received and accepted by ATK.  The withholding of this payment coincided with cash flow problems within ATK, in connection with which, ATK was attempting to identify payables which it could avoid or delay.  The product against which payment was withheld included product not at all implicated in the investigation and included product not only subject to the medium-caliber contract between NMT and Alliant Ammunition and Powder Co. but also on small-caliber product which was the subject of a different contract with a different ATK entity, Alliant Techsystems.

76.    On or about November 21, 2000, ATK stopped payment on its check for $153,000, which represented payment on the first half of Lot 68 M-28 links which NMT had shipped in October and which ATK had inspected and accepted.

77.    ATK knew that non-payment would have a devastating financial impact on NMT as NMT was in tight financial condition and highly dependent on ATK business.

78.    The check which ATK stopped payment on was not for any links implicated in the search but rather a prior shipment.  Although re-tested and found to be entirely conforming by no later December 1, 2000, ATK did not make any payment on these links until late January 2001 and then improperly deducted amounts from the payment.

79.    ATK also froze payments on all invoices on all products.  It did so knowing that this stop payment would have a potentially disastrous effect on NMT and NMTI.  These actions immediately raised questions with NMT's lender over NMT's ability to collect receivables, the value of its inventory and the viability of its backlog, triggering defaults under credit agreements which were secured by essentially all of the assets of both NMT and NMTI.

80.    Without ever having experienced a problem with the links or a complaint from the government about them, ATK also announced that it was going to re-test all of the M-28 links which remained in inventory, even shipments of links which had long before been accepted, paid

14

1   for and largely incorporated into ammunition.  NMT had to divert time and effort away from

2   current orders into this testing regime.

3       81.    In re-testing the links it became apparent that the testing methodology ATK was

4   employing was not in conformity with hardness testing practices or specifications was

5   untrustworthy and was yielding inconsistent and unreliable results.  Additionally, it also became

6   apparent that the characteristic and standards of hardness for which the links were being re-tested,

7   were unrelated to the functional performance of the links.  One ATK executive later admitted

8   (after ATK began manufacturing links) that links might even be made from plastic.  In the end,

9   ATK accepted and incorporated these links into the linked ammunition it sold to the Army.  No

10   acceptance would have been forthcoming if the Army had not determined that the product would

11   be safe, conforming and fully acceptable.

12       82.    Throughout December 2000 and January 2001, NMT, in dire straits because of

13   ATK's wrongful conduct, attempted to get links released and paid for product.  ATK, claimed

14   unspecified potential offsets and refused to pay.  Unbeknownst to NMT, by January 3, 2001, the

15   medium-caliber purchasing personnel had confirmed their determination to cease buying links

16   from NMT, and to terminate the contracts without regard for the merits (or lack thereof) of the

17   pending investigation.

18       83.    On June 8, 2001, word came from the Army that the government no longer had

19   any investigative interest in the Lot 68 NMT links which had been the subject of the now

20   moribund investigation.  They had been tested by the Army in March and found to be totally

21   acceptable.  They were accepted by ATK and incorporated into linked ammunition which ATK

22   sold to the Army.

23       84.    By letter dated July 12, 2001, ATK notified NMT that it would now accept the

24   second half of Lot 68 links, Lot 69 links and all leftover Lot 68 links.  ATK had previously also

25   accepted a lot of M-28 links manufactured in early 2001 by NMT, Lot 70.  At the end of the day,

26   ATK accepted every single M-28 link which NMT had manufactured before and after the search.

27   **ATK Interfered with NMT's Attempts to Acquire Valentec**

28       85.    NMT had informed ATK of its plans to explore acquiring Valentec.

15

86.     In about early June 2000, NMT renewed activity toward a possible purchase of Valentec.  On June 1, 2000, NMT wrote to Valentec and again expressed an interest in acquiring it, executed a confidentiality agreement, initiated due diligence and conducted price-specific purchase negotiations.

87.     In early February 2001, NMT, in another effort to salvage its business, offered to buy Valentec for $7 million.  In both cases ATK interfered with those negotiations.

**ATK's Acquisition of Valentec**

88.     In February 2001, ATK negotiated for the closure of Valentec's California facility and its re-location to ATK's Lake City, Missouri plant.

89.     On March 5, 2001, ATK and Valentec entered into an eight year (the time remaining on ATK's small-caliber linked ammunition contract with the Army) Facility Use Agreement to move Valentec into ATK's Lake City facility with an option to purchase Valentec.

90.     In early August 2001, ATK entered into an agreement whereby ATK agreed to reimburse Valentec for all Valentec's operating costs from August through October 2001 and an option to purchase Valentec's links assets for $4 million in cash at a closing to be held on or before September, 15, 2001.

91.     ATK determined to seek over $14 million in aid from the Army in acquiring Valentec and in capital improvements in what would now be an ATK monopoly.

92.     The acquisition closed on September 27, 2001, pursuant to an agreement dated September 16, 2001.

93.     Internal ATK presentation materials in favor of the acquisition laid out ATK's plans to increase its competitor's links prices and make profits and a positive return on its investment aided by Army funding.

94.     As a condition for the purchase, all of Valentec's links customers had to execute a release of all price provisions in existing contracts.  This permitted ATK, upon closing, to exercise its monopoly power to immediately renegotiate those prices upward, which it did.

**Upon Purchasing Valentec, ATK Exercised Its Monopoly Power Raising Prices in the Ammunition Links Market**

95.     ATK's acquisition of Valentec has had an anticompetitive effect in the market for links and resulted in harm to the competitive process.  Links prices have escalated dramatically over where they were when there was competition in the links market.

96.     Although the links business is a relatively minor component of ATK's overall business, a disproportionately large percentage of growth from its Lake City division is forecasted to come from its monopoly links business.

97.     ATK, in its course of conduct, which both injured NMT and culminated in the Valentec acquisition, created for itself a monopoly in the ammunition links market.

**Upon Purchasing Valentec, ATK Exercised Its Monopoly Power Excluding Competition in the Ammunition Links Market**

98.     ATK exercised its monopoly power to exclude competition.  In 2002, a startup company, International Ordinance Technologies, Inc. contacted ATK to inquire as to the possibility of ATK purchasing links from it.  ATK responded by saying that it was not interested in seeing anyone else in the links business and would not buy links from International Ordnance unless forced to do so.

99.     ATK's purchase of ovens from NMT's links plant, and encouragement to the Army to remove Government-owned presses from NMT's facility also helped to insure that NMT could not re-enter the links manufacturing business.

100.    ATK has engaged in other anticompetitive, output restricting activities since acquiring its monopoly such as not bidding links RFQs from its linked ammunition competitors, refusing to buy from its links competitors notwithstanding output limitations, pricing links to its competitors at high non-competitive prices, manufacturing links with quality problems and imposing or attempting to impose anti-competitive tying arrangements.  The Army has expressed significant concerns with the lack of competition in the links market and ATK's misuse of its monopoly position.  ATK's conspiracy with Valentec to repudiate ATK's links contracts with NMT and ATK's monopolistic conduct in driving its two competitors out of the links business

17

1  precipitated a significant military readiness issue of which ATK advantaged itself by financing its

2  control of the links business with government dollars.

3  **ATK Tortiously Interfered with NMTI's Attempt to Merge with Comtel Holdings, Inc.**

4     101.   An economic relationship between NMTI and Comtel with the probability of

5  future economic benefit to NMTI existed.

6     102.   On February 16, 2001, NMTI obtained a signed letter of intent from Comtel to

7  merge with NMTI, exclusive of its links business, valuing NMTI alone at $17 million.

8     103.   Comtel intended to finalize the transaction as soon as certain conditions were met,

9  principally that the links business be excluded from the deal in some way, because Comtel was

10 concerned about potential environmental liabilities.

11    104.   ATK knew of NMTI's discussions with Comtel concerning a potential merger.

12    105.   ATK knew that its breaches of its contracts with NMT detailed above and antitrust

13 violations would severely and adversely impact NMT's and NMTI's business and financial

14 condition such that the merger with Comtel would be imperiled.

15    106.   ATK's anticompetitive conduct *itself* made it impossible for NMTI to sell the links

16 business.

17    107.   As a direct result of the overall cumulative effect of ATK's wrongful actions, and

18 the harm to NMT and NMTI's business and financial condition caused by this conduct, Comtel

19 had to pull out of the merger.

20    108.   Comtel was valued at $34 million.  NMTI was valued at $17 million.  The merged

21 entity, NMTI would have been valued at $51 million.  As a consequence of ATK's interference

22 with the Comtel merger, NMTI suffered a loss of $51 million.

23    109.   ATK's anticompetitive acts in disrupting the NMTI/Comtel merger were

24 "independently wrongful."

25

26

27

28

III.    **CONTENTS OF LAW**

A.    **Breach of Contract**

**General Requirements**

110.    To demonstrate a breach of contract, Plaintiff NMT must prove the following: 1) NMT and ATK entered into a contract; 2) NMT performed what it was required to perform or was excused from performance; 3) All of the conditions occurred that were required for ATK's performance; 4) ATK failed to do something the contract required it to do; and 6) NMT was harmed by that failure.  *See* Judicial Council of California Civil Jury Instruction ("CACI"), VF-300 (Breach of Contract).

**Interpretation of the Contract**

111.    The California Uniform Commercial Code defines an "agreement" to mean "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." Cal. Com. Code § 1201(3). "Course of dealing, trade usage, and course of performance are all factors which are relevant to 'give particular meaning to and supplement or qualify terms of an agreement.'" *New West Fruit Corp. v. Coastal Berry Corp.*, 1 Cal. App. 4th 92, 99 (1991) (quoting Cal. Com. Code §§ 1205(3); 2202; 2208).

112.    Where a contract for sale "involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." Cal. Com. Code § 2208(1).

113.    As defined in the California Uniform Commercial Code, a course of dealing is a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Cal. Com. Code § 1205(1).

114.    Trade usage includes "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with

19

1   respect to the transaction in question.  The existence and scope of such a usage are to be proved as

2   facts." Cal. Com. Code § 1205(2).

3       115.   The fundamental goal of contractual interpretation is to give effect to the mutual

4   intention of the parties. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  Such

5   mutual intention of the parties "is determined by objective manifestations of the parties' intent,

6   including the words used in the agreement, as well as extrinsic evidence of such objective matters

7   as the surrounding circumstances under which the parties negotiated or entered into the contract;

8   the object, nature and subject matter of the contract;  . . . and the subsequent conduct of the

9   parties." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998) (citing Cal. Civ. Code §§ 1635-

10  1656; Cal. Civ. Proc. Code §§ 1859-1861, 1864; *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal.

11  App. 4th 1791, 1814 (1994)).  In determining the meaning of disputed contractual terms, the court

12  "must provisionally receive any proffered extrinsic evidence which is relevant to show whether the

13  contract is reasonably susceptible of a particular meaning." *Morey*, 64 Cal. App. 4th at 912.

14  Extrinsic evidence is admissible to aid in the interpretation of a contract.  *Medical Operations*

15  *Mgmt. v. National Health Labs.*, 176 Cal. App. 3d 886, 891-92 (1986); *Hernandez*, 28 Cal. App.

16  4th at 1814.

17  **Covenant of Good Faith and Fair Dealing**

18      116.   "The principles of 'good faith' in the Uniform Commercial Code and in the

19  common law are basic principles running throughout all commercial transactions including those

20  governed by the Uniform Commercial Code." *E.F. Hutton & Co. v. City Nat'l* Bank, 149 Cal.

21  App. 3d 60, 73 (1983).  The California Uniform Commercial Code provides, "Every contract or

22  duty within this code imposes an obligation of good faith in its performance or enforcement." Cal.

23  Com. Code § 1203.  The Code further defines "good faith" in the case of a merchant to mean

24  "honesty in fact and the observance of reasonable commercial standards of fair dealing in the

25  trade." Cal. Com. Code § 2103(b).

26      117.   A covenant of good faith and fair dealing is implied in all contracts, that neither

27  party will do anything which will injure the right of the other to receive the benefits of the

28  agreement. *Gianelli Distrib. Co. v. Beck & Co.*, 172 Cal. App. 3d 1020, 1035 (1985).  *See also*

1   *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F. Supp. 923, 929-30 (N.D. Cal.

2   1970). This covenant not only imposes upon each contracting party the duty to refrain from doing

3   anything which would render performance of the contract impossible by any act of his own, but

4   also the duty to do everything that the contract presupposes that he will do to accomplish its

5   purpose. *C. Pappas Co. v. E. & J. Gallo Winery*, 610 F. Supp. 662, 665-67 (E. D. Cal. 1985).

6       118.   "'[Where] a contract confers on one party a discretionary power affecting the

7   rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance

8   with fair dealing.'" *Kendall v. Ernest Pestana, Inc.*, 40 Cal. 3d 488, 500 (1985) (citing *Cal.*

9   *Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 484 (1955)). *See also California v. Chevron*

10  *Corp.*, 872 F.2d 1410, 1413 (9th Cir. 1989).

11  **Conforming Goods**

12      119.   "Goods or conduct including any part of a performance are 'conforming' or

13  conform to the contract when they are in accordance with the obligations under the contract." Cal.

14  Com. Code § 2106(2).

15  **Risk of Loss**

16      120.   California Uniform Commercial Code § 2509 provides in pertinent part:

17  (1) Where the contract requires or authorizes the seller to ship the goods by
         carrier.

18
19      (a) If it does not require him to deliver them at a particular destination, the risk
            of loss passes to the buyer when the goods are duly delivered to the carrier
            even though the shipment is under reservation (Section 2505); but

20
21      (b) If it does require him to deliver them at a particular destination and the
            goods are there duly tendered while in the possession of the carrier, the risk
22          of loss passes to the buyer when the goods are there duly so tendered as to
            enable the buyer to take delivery.

23  (3) In any case not within subdivision (1) or (2), the risk of loss passes to the
         buyer on his receipt of the goods if the seller is a merchant; otherwise the risk
24       passes to the buyer on tender of delivery.

25  **Buyer's Obligations**

26      121.   The obligation of the buyer "is to accept and pay in accordance with the contract."

27  Cal. Com. Code § 2301. Section 2607 details further obligations as follows:

28      (1) The buyer must pay at the contract rate for any goods accepted.

21

(2) Acceptance of goods by the buyer precludes rejection of the goods accepted and, if made with knowledge of a nonconformity, cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured.

(3) Where a tender has been accepted:

(A) The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy; and

(4) The burden is on the buyer to establish any breach with respect to the goods accepted.

122.    In defining conditions constituting acceptance, § 2606 of the California Commercial Code provides as follows:

(1) Acceptance of goods occurs when the buyer

(a) After reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) Fails to make an effective rejection after a reasonable opportunity to inspect; or

(c) Does any act inconsistent with the seller's ownership.

123.    With respect to rejection, § 2602 provides in pertinent part:

(1) Rejection of goods must be within a reasonable time after their delivery or tender.  It is ineffective unless the buyer seasonably notifies the seller.

(2) Subject to the provisions of the two following sections on rejected goods (Sections 2603 and 2604),

(a) After rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller.

124.    Under § 2717 of the California Uniform Commercial Code, claims of offset are limited to damages resulting from any breach of the same contract.  The Uniform Commercial Code Section 2-717 is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer.  *"Damages are deductible only against the price still due under the same contract."* Pac. W. Resin Co. v. Condux Pipe Sys., Inc., 771 F. Supp. 313, 316 (D. Or. 1991) (quoting *C.R. Bard, Inc. v. Medical Elec.*

22

1    *Corp.*, 529 F. Supp. 1382, 1387 (D. Mass. 1982)) (emphasis added).   A buyer may only off-set

2    damages from those contracts dealing with the same underlying transaction.   *M/A-Com, Inc. v.*

3    *C.W. Swift & Assocs., Inc.*, No. CV 94-2713-GHK, 1995 U.S. Dist. LEXIS 22321, at *8 (C.D.

4    Cal., Sept. 27, 1995), *aff'd*, 110 F.3d 68 (9th Cir. 1997).

**Causes Excusing Performance**

125.    California Uniform Commercial Code § 2615 provides:

(a) Delay in delivery or nondelivery in whole or in part by a seller who complies
with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if
performance as agreed has been made impracticable by the occurrence of a
contingency the nonoccurrence of which was a basic assumption on which the
contract was made.

126.    California Civil Code § 1511 provides in pertinent part "The want of performance

of an obligation, or an offer of performance, in whole or in part, or any delay therein, is excused

by the following causes, to the extent which they operate.   1) When such performance or offer is

prevented or delayed by the act of the creditor . . ."   Civil Code § 1512 further provides, "If the

performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits

which he would have obtained if it had been performed by both parties."

**Seller's Remedies**

127.    California Uniform Commercial Code § 2703 provides for the seller's remedies

upon buyer's breach as follows:

Where the buyer wrongfully rejects or revokes acceptance of goods or fails
to make a payment due on or before delivery or repudiates with respect to a part or
the whole, then with respect to any goods directly affected and, if the breach is of
the whole contract (Section 2612), then also with respect to the whole undelivered
balance, the aggrieved seller may

(a)    Withhold delivery of such goods;

(b)    Stop delivery by any bailee as hereafter provided (Section 2705);

(c)    Proceed under the next section respecting goods still unidentified to
the contract;

(d)    Resell and recover damages as hereafter provided (Section 2706);

23

1

2

      (e)     Recover damages for nonacceptance (Section 2708) or in a proper case the price (Section 2709);

3

      (f)     Cancel.

4

    128.   California Uniform Commercial Code § 2610 further provides:

5

6

     When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

7

8

      (a)   For a commercially reasonable time await performance by the repudiating party; or

9

10

      (b)   Resort to any remedy for breach (Section 2703 or Section 2711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

11

12

13

      (c)   In either case suspend his own performance or proceed in accordance with the provisions of this division on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 2704).

14 **Damages**

15    129.   California Civil Code § 3300 provides "For the breach of an obligation arising

16 from contract, the measure of damages, except where otherwise expressly provided by this code, is

17 the amount which will compensate the party aggrieved for all the detriment proximately caused

18 thereby, or which, in the ordinary course of things, would be likely to result therefrom." "The

19 detriment that is 'likely to result therefrom' is that which is foreseeable to the breaching party at

20 the time the contract is entered into." *Wallis v. Farmers Group, Inc.*, 220 Cal. App. 3d 718, 737

21 (1990) (citation omitted).

22    130.   Where the injured party shows that, as a reasonable probability, profits would have

23 been earned on the contract except for its breach, the loss of the anticipated profits is compensable.

24 Where business activity has been interrupted by a breach of contract, damages for the loss of

25 prospective profits that otherwise might have been made from its operation are generally

26 recoverable where such damages are shown to have been foreseeable and reasonably certain.

27 *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 468 (1990).

28 *See also* CACI, No. 352.

131.   Under Cal. Com. Code § 2708, "the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this division (Section 2710), but less expenses saved in consequence of the buyer's breach." Cal. Com. Code § 2708(1).

132.   Where this amount is inadequate "to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages . . ., due allowance for costs reasonably incurred and due credit for payments or proceeds of resale." Cal. Com. Code § 2708(2).

133.   "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyers' breach, in connection with return or resale of the goods *or otherwise resulting from the breach.*" Cal. Com. Code § 2710 (emphasis added).  The remedies of California's Uniform Commercial Code are to be "liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ." Cal. Com. Code § 1106.

134.   Additionally, the California Uniform Commercial Code provides for contract damages in the following provision:

> § 2709.
>
> (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price
>
> > (a)  Of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and
> >
> > (b)  Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.
>
> (3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 2610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under the preceding section.

1

B.    Antitrust Claims

2

Sherman Act

3    135.    Monopolization consists of the possession of monopoly power in a relevant market

4    and the willful acquisition or maintenance of that power as distinguished from growth or

5    development as a consequence of a superior product, business acumen or historic accident. *United*

6    *States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Aspen Skiing Co. v. Aspen Highlands*

7    *Skiing Corp.*, 472 U.S. 585, 605 (1985).  To prove a claim of monopolization under Section 2 of

8    the Sherman Act (15 U.S.C. § 2 (2002)), a plaintiff must show that: 1) the defendant possesses

9    monopoly power in the relevant market; 2) the defendant has willfully acquired or maintained that

10   power through exclusionary conduct, and 3) the defendant's conduct has caused antitrust injury.

11   *See MetroNet Serv. Corp. v. Qwest Corp.*, Civ. No. 01-35406, 2004 U.S. App. LEXIS 20107, at

12   *16 (9th Cir. Sept. 24, 2004); *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 949

13   (9th Cir. 1996).  *See also Grinnell*, 384 U.S. at 570-71; *Oahu Gas Serv., Inc. v. Pacific Resources,*

14   *Inc.*, 838 F.2d 360, 368 (9th Cir. 1988).

15   136.    To prove a claim of attempted monopolization, a plaintiff must show: 1) specific

16   intent to control pieces or destroy competition; 2) predatory or anticompetitive conduct to

17   accomplish the monopolization; 3) dangerous probability of success; and 4) causal antitrust injury.

18   *See SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996).  *See also*

19   *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 541-42 (9th Cir. 1991); *Spectrum*

20   *Sports v. McQuillan*, 506 U.S. 447 (1993).

21   137.    Monopoly power is the power to control prices or exclude competition in a

22   "relevant market," *United States v. E.I. Dupont de Nemours & Co.*, 351 U.S. 377, 391 (1956);

23   *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997).  Monopoly power in the

24   hands of a purchaser is referred to as "monopsony."  Antitrust Law Developments (Fourth) Vol. 1

25   at 232 (1997).  The point of departure for a Section 2 analysis is the definition of the product and

26   geographic markets relevant to the defendant's conduct.  *See e.g., Brown Shoe Co. v. United*

27   *States*, 370 U.S. 294, 325 (1962).  In this case, the two relevant product markets are the market for

28

26

1    small and medium caliber linked ammunition and the market for small and medium caliber links.

2    The geographic market in both instances is the United States.

3        138.   Section 2 of the Sherman Act proscribes monopolization that is in or affects

4    interstate commerce. 15 U.S.C. § 2.

5        139.   Although market share does not alone determine monopoly power, market share is

6    an important factor to consider in determining the presence or absence of monopoly power. *Movie*

7    *1 & 2*, *United Artists Communications, Inc.*, 909 F.2d 1245, 1254 (9th Cir. 1990).  A 75% market

8    share is likely to permit or require an inference of market power. *International Boxing Club v.*

9    *United States*, 358 U.S. 252, 249 (1959); *E.I. DuPont*, 351 U.S. at 399.  Market share as low as 45-

10    70% may support a finding of monopoly power, if accompanied by other relevant factors.  *Id.*

11    (citing *Pacific Coast Agric. Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1204 (9th Cir.

12    1975)).

13        140.   The Ninth Circuit has established that both market definition and market power are

14    questions of fact appropriate for jury consideration. *Rebel Oil Co. v. Atlantic Richfield Co.*, 133

15    F.R.D. 41, 44 (D. Nev. 1990) (citing *Oahu Gas Serv.*, 838 F.2d at 363); *Twin City Sportservice,*

16    *Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1299 (9th Cir. 1982); *Greyhound Computer Corp.*

17    *v. IBM Corp.*, 559 F.2d 488, 496-97 (9th Cir. 1977)).

18        141.   A product market is defined with respect to the products or services to which

19    consumers would switch in the event of a small but significant and non-transitory increase in price.

20    *See* Department of Justice Antitrust Horizontal Merger Guidelines § 1.0 (1992); *E.I. Dupont*, 351

21    U.S. 377; *Rebel Oil Co.*, 51 F.3d at 1436-37.

22        142.   A monopolist's act must have an "anticompetitive effect."  That is, it must harm

23    the competitive process. *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001).

24        143.   To prove "antitrust injury," plaintiff must show that its injuries emanate from the

25    type of conduct that the antitrust laws were intended to proscribe and flow from the conduct that

26    makes the Defendant's actions unlawful under the antitrust laws. *American Ad Mgmt., Inc. v.*

27    *General Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).  Antitrust laws are intended to proscribe

28    exercises of market power, acquisitions and monopolies that result in a diminution of competition,

27

higher prices, or reduced output.  Indeed, antitrust injury is a loss that flows from acts that hurt competition.  *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 487-89 (1977); *Rebel Oil,* 51 F.3d at 1433.

144.  Using monopoly power in one product market to drive a rival out of a complementary market in a successful effort to monopolize that second market is conduct proscribed by the antitrust laws. *See Image Tech. Servs,* 125 F.3d at 1209.

145.  Section 2 of the Sherman Act preserves the right to compete on the merits to become a natural monopolist.  *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973); *see also Fishman v. Estate of Wirtz,* 807 F.2d 520 (7th Cir. 1986); *Helix Milling Co. v. Terminal Flour Mills Co.,* 523 F.2d 1317 (9th Cir. 1975); *Greenville Publ'g Co. v. Daily Reflector, Inc.* 496 F.2d 391, 397 (4th Cir. 1974).

146.  In determining whether a firm has violated Section 2, the trier-of-fact may consider the totality of the relevant facts and circumstances and not compartmentalize the plaintiff's proof.  *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (Sherman Act § 1); *Anaheim v. Southern California Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992).

**Causation**

147.  Causation is shown if defendants' conduct was a material factor in bringing about NMT's injuries.  Plaintiffs are not required to prove that the defendant's conduct was the sole or even principal cause of its injuries.  *Dolphin Tours Inc. v. Pacifico Creative Serv., Inc.,* 773 F.2d 1506, 1509-10 (9th Cir. 1985); *William Inglis & Sons Baking Co. v. Continental Baking Co.,* 942 F.2d 1332, 1339-40 (9th Cir. 1991).

**Damages**

148.  Section 4 of the Clayton Act provides that any person who is injured in his business or property by reason of anything forbidden in the antitrust laws may sue under that provision, and mandates the trebling of the recoverable single damages.  15 U.S.C. § 15(a).

149.  Lost profits and going concern value of business are alternative measures of recoverable antitrust damages.  *Dolphin Tours,* 773 F.2d at 1509-11 and n.5.

28

150.    A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same precision and exactness that would otherwise be possible. *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927).

151.    Once an antitrust plaintiff has established the fact of damage, it is given substantial latitude in proving the amount of its damages. *Dolphin Tours*, 773 F.2d at 1510, 1511. The jury is allowed to act on probable and inferential proof in determining the amount of damages even though such an award may be an approximation. *Id.* ("In antitrust cases, a lesser level of proof is needed to support the amount of damages than to support the fact of antitrust injury; in applying this 'liberal proof of damages standard,' we have required only that the plaintiff provide sufficient evidence to permit a 'just and reasonable estimate of the damages.'") *Los Angeles Mem'l Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (citation omitted). *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946); *Story Parchment, Co. v. Paterson Parchment Paper Co.*, 282 U.S 555, 561-66 (1931); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9 (1969); *J.Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981); *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 811-12 (9th Cir. 1976).

**Attorneys' Fees**

152.    The antitrust claims provide for the mandatory award of reasonable attorneys' fees and costs to the plaintiff. 15 U.S.C. § 15(a). Attorneys' fees are awarded to a prevailing plaintiff even in the plaintiff is awarded only nominal damages. *United States Football League v. National Football League*, 887 F.2d 408, 411-12 (2d Cir. 1989).

**Clayton Act**

153.    Section 7 of the Clayton Act (15 U.S.C. § 18) prohibits acquisitions "where . . . the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984); *FTC v. Alliant Techsystems, Inc.*, 808 F. Supp. 9, 19 (D.D.C. 1992).

154.    Section 7 is actionable through the Clayton Act by a private plaintiff for damages. *Lucas Automotive Eng'g, Inc. v. Bridgestone/ Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998).

29

155.    A claim for unlawful acquisition or merger under Section 7 of the Clayton Act requires proof that an acquisition or merger has had or will have an anticompetitive effect. *See* *FTC*, 742 F.2d at 1160.

## C.    Intentional Interference with Prospective Economic Advantage

156.    The elements of the tort of interference with prospective economic advantage are: 1) an economic relationship between the plaintiff and some third party; 2) the defendant's knowledge of the relationship, 3) intentional acts on the part of the defendant designed to disrupt the relationship; 4) actual disruption of the relationship; and 5) proximate resulting harm to the plaintiff. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 1134, 1153 (2003).

157.    The elements of the tort of interference with prospective economic advantage do not require a plaintiff to allege that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. *Korea Supply*, 29 Cal. 4th at 1155. It is sufficient if "the defendant knew that the interference is certain or substantially certain to occur as a result of his action." *Id.* at 1154.

158.    Plaintiff must show that the defendant "engaged in an act that is wrongful apart from the interference itself." *Korea Supply*, 29 Cal. 4th at 1154. An act is independently wrongful if it is proscribed by some constitutional, statutory, regulatory, common law or other determinable standard. *Id.* at 1159.    Conduct that violates the antitrust laws satisfies the independent wrongfulness element. *See Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1688 (1997). "Commonly included among improper means are actions which are independently actionable, violations of federal or state law or unethical business practices, *e.g.,* violence, misrepresentation, unfounded litigation, defamation, trade libel, or trade mark infringement." *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 602 (1996).

159.    The tort of intentional interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition. *Settimo Associates v. Environ Sys., Inc.* 14 Cal. App. 4th 842, 845 (1993).

160.    With respect to the element of the existence of a business relationship with which the tortfeasor interfered, plaintiff need only show that it was reasonably probable that the prospective economic advantage would have been realized but for the defendant's interference. *Youst v. Longo,* 43 Cal. 3d 64, 71 (1987).

**Damages**

161.    The measure of damages for the commission of a tort, is that amount which will compensate the plaintiff for all detriment sustained by him as the proximate result of the defendant's wrong, regardless of whether or not such detriment could have been anticipated by the defendant.  Such damages may include loss of anticipated profits where an established business has been injured. *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,* 227 Cal. App. 2d 675 (1964).

162.    Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, a party may name a corporation as a deponent and require that corporation to designate a person or persons to speak on its behalf.  The corporation is said to appear "vicariously through that agent." *Resolution Trust Corp. v. S. Union Co.,* 985 F.2d 196, 197 (5th Cir. 1993).  Therefore, answers given by the designated person are binding on the corporation. *See Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb. 1995).

## IV.    ABANDONED ISSUES

163.    Except to the extent that the parties will stipulate to certain facts, the parties have not abandoned any issues.

## V.    LIST OF WITNESSES

164.    Pursuant to Local Rule 16.1(f)(2)(d) the list of witnesses Plaintiffs expect to call is attached hereto as Exhibit A and the list of witnesses Plaintiffs may call if the need arises is attached hereto as Exhibit B.

31

## VI.   LIST OF EXHIBITS

165.   Pursuant to Local Rule 16.1(f)(2)(c) Plaintiffs' list of exhibits they expect to use is attached hereto as Exhibit C and the list of exhibits Plaintiffs may use is attached hereto as Exhibit D.

DATED: October 7, 2004

HULETT HARPER STEWART LLP
DENNIS STEWART
BLAKE M. HARPER
STEPHANIE L. DIERINGER
BRIDGET FOGARTY GRAMME


DENNIS STEWART

550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:   (619) 338-1133
Facsimile:    (619) 338-1139

SULLIVAN HILL LEWIN REZ & ENGEL
DONALD G. REZ
550 West C Street, Suite 1500
San Diego, CA  92101-3540
Telephone:   (619) 233-4100
Facsimile:    (619) 231-4372

GUSTAFSON GLUEK PLLC
DANIEL E. GUSTAFSON
600 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Telephone:   (612) 333-8844
Facsimile:    (612) 339-6622

FREEDMAN BOYD DANIELS HOLLANDER
  GOLDBERG & CLINE PA
JOSEPH GOLDBERG
20 First Plaza, Suite 700
Albuquerque, NM  87102
Telephone:   (505) 842-9960
Facsimile:    (505) 842-1925

Attorneys for Plaintiffs

32

**EXHIBIT A**

| NAME | ADDRESS |
|------|---------|
| Denis Belanger | SNC Technologies, Inc., 5 Monteo des Armaux, Le Gardener, Quebec, Canada |
| Jennifer Brown | c/o Counsel for Plaintiffs |
| Edward Carpenter | c/o Counsel for Plaintiffs |
| Mark Deyoung* | c/o Defendant ATK |
| Dale Dimitroff* | c/o Defendant ATK |
| Marvetta R. Dooley* | c/o Defendant ATK |
| John Finkbiner* | c/o Defendant ATK |
| Bill Grivas | c/o Counsel for Plaintiffs |
| Holn Guz | IMI Trading USA Inc., 570 7th Avenue, New York, NY 10016 |
| Mark Hafner | 2951 28th Street, Suite 2030, Santa Monica, CA 90405 |
| Kent Holiday* | c/o Defendant ATK |
| Robert Hoops* | c/o Defendant ATK |
| Lyle Jensen | 5780 East Cielo Run, Cave Creek, AZ 85331 |
| Jim Krawczyk* | c/o Defendant ATK |
| Michael Lodge* | c/o Defendant ATK |
| Judy Maples | Olin Corp., 427 N. Shamrock Street, East Alton, IL |
| James McClave | 5700 Southwest 34th Street, Gainesville, FL |
| Patrick Moore | c/o Counsel for Plaintiffs |
| Larry Naritelli | c/o Counsel for Plaintiffs |
| Bill Noon* | c/o Defendant ATK |
| Steve Neubauer* | c/o Defendant ATK |
| C. Allan Parish* | c/o Defendant ATK |
| Victor Ramsauer | 701 B Street, 4th Floor, San Diego, CA 92101 |
| Bob Rose | Sheppard Mullin Richter & Hampton, 501 West Broadway, San Diego, CA 92101 |
| Lawrence H. Smith* | c/o Defendant ATK |
| Tammy Snyder | International Ordnance Technologies, Jamestown, New York |
| Jeff Tardiff | c/o Counsel for Plaintiffs |
| Robert Tollison | Department of Economics, Clemson University, Clemson, SC 29634 |
| Nick Vlahakis* | c/o Defendant ATK |
| John Wilson | c/o Counsel for Plaintiffs |

**EXHIBIT B**

| NAME | ADDRESS |
|------|---------|
| Lonnie B. Alperson* | Rolled Steel Products, 2187 S. Garfield Avenue, Los Angeles, CA 90040 |
| Victor Andonie | 1209 San Dario Avenue, PMB 92-345, Loredo, TX 8040 |
| Sue Bartle | Address unknown at this time |
| James Biddlecome* | 1005 Gamble Lane, Escondido, CA |
| Don Blea | 1424 Mountain Meadow Drive, Oceanside, CA |
| Craig Brattlebo | c/o Defendant ATK |
| John Corey | 40 Emery Street, Greenville, SC 29605 |
| Steve Farley* | c/o Defendant ATK |
| Robert Fields | 110 Wall Street, 7th Floor, New York, NY 10005 |
| Ed Hetzel | 12469 Route 66, Marion , Illinois |
| Edward Khoury | 2951 28th Street, Suite 2030, Santa Monica, CA 90405 |
| Mike Marcos | Address unknown at this time |
| Isabella Martinez | Address unknown at this time |
| Michael McCarthy | c/o Counsel for Plaintiffs |
| Thomas B. Nelis* | 17500 Working Way, Yorba Linda, CA |
| Joe Saputo | Olin Corporation, 501 Merritt Seven, Norwalk, CT 06856 |
| Richard Saul | NCIS, 3405 Welles Street, Suite 1, San Diego, CA 92135 |
| Bertha Valladares | 3175 Camarillo Avenue, Oceanside, CA |
| Jim Waites | DCMA, 7675 Dagget Street, Ste. 200, San Diego, CA 92111 |
| Kenneth Whiteberg* | 2903 Linda Drive, Oceanside, CA 92056 |
| Custodian of records Olin Corp. | 427 North Shamrock Street, East Alton, IL |
| Custodian of records American Ordnance | 2280 Highway 104 West, Suit 2, Milan, TE 38358 |
| Custodian of records GDOTS | 10101 Dr. Martin Luther King Street, Saint Petersburg, FL |
| Custodian of records Comtel Holdings, Inc. | 1401 Myford Road, Tustin, CA 92680 |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 1 | | | Federal Test Method Standard Metals: Test Methods | 10/07/71 | ATK | 80382 | 80479 |
| 2 | | | Mil Specs M27 | 05/09/86 | NMT | 10281 | 10298 |
| 3 | | | Mil Specs M13 | 02/01/96 | NMT | 1087 | 10203 |
| 4 | | | Military Specification Link, Cartridge, Metallic Belt, 5.56MM, M27 | 04/10/96 | ATK | 80082 | 80100 |
| 5 | | | Military Specification Link, Cartridge, Metallic Belt, Caliber .50, M9 | 04/23/97 | ATK | 80200 | 80221 |
| 6 | | | Olin Corporation-Winchester Division Lake City Army Ammunition Plant | 09/28/98 | ATK | 80148 | 80149 |
| 7 | | | Raw Material Lots Received Report 1/1/99 to 4/2/2002 | 01/01/99 | ATK | 40569 | 40570 |
| 8 | | | Raw Material Lots Received Report 1/1/99 to 4/10/2002 | 01/01/99 | ATK | 40573 | 40574 |
| 9 | | | Raw Materials Lot Accepted Report 1/1/99 to 4/2/02 | 01/01/99 | ATK | 40571 | 40572 |
| 10 | | | Letter to Michael Morcos from Patrick Moore | 01/10/99 | ATK | 40718 | 40718 |
| 11 | | | Weinmann Letter to Valentee Subject: Medium Caliber Business | 02/03/99 | ATK | 22031 | 22031 |
| 12 | | | Letter from Bartle (Valentec) Alliant Request for Quote | 02/25/99 | ATK | 41008 | 41011 |
| 13 | | | Alliant RFP - RLH-L004 (Valentec) | 02/25/99 | ATK | 41016 | 41020 |
| 14 | | | Certifications | 02/25/99 | ATK | 41016 | 41020 |
| 15 | | | Olin Corporation-Winchester Division Lake City Army Ammunition Plant | 03/25/99 | ATK | 80196 | 80197 |

1

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 16 | | | Huddle Meeting Alliant Ammunition and Powder Company | 06/08/99 | ATK | 240492 | 240500 |
| 17 | | | Alliant Techsystems News Release | 08/02/99 | NMT | 2 | 3 |
| 18 | | | Memo from Jeff Tardiff to Marvetta Dooley re: 30mm ammo strip inspection gauges | 08/13/99 | ATK | 11345 | 11345 |
| 19 | | | Special Presentation for Alliant Techsystems SMCA Team | 08/27/99 | ATK | 10172 | 10209 |
| 20 | | | E-mail to Noon re: Meeting with NMT | 08/27/99 | ATK | 11342 | 11344 |
| 21 | | | E-mail from Holiday re: Valentec Settlement Agreement | 08/27/99 | ATK | 31165 | 31166 |
| 22 | | | Meeting Invitation | 08/27/99 | ATK | 11343 | 11344 |
| 23 | | | Letter from Patrick Moore to Michael McCann (Photomatrix) | 09/01/99 | ATK | 11341 | 11341 |
| 24 | | | Fax Transmittal | 09/20/99 | NMT | 25 | 28 |
| 25 | | | Letter to Jeff Tardiff dated September 22, 1999 | 09/22/99 | NMT | 29 | 29 |
| 26 | | | Letter from Michael L. McCarthy to Marvetta Dooley ref: RFB #MRD-0003, Ammo Strip | 09/22/99 | ATK | 31035 | 31036 |
| 27 | | | Photomatrix Receives $4.8 Million Metal Manufacturing Services Contract | 09/29/99 | ATK | 11340 | 11340 |
| 28 | | | E-mail from Mike Conrad to Rob Hoops re: National Metal Technologies - Jeff Tardiff Phonecon | 10/14/99 | ATK | 31159 | 31159 |

2

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 29 | | | E-mail from Noon (conversation with Tardiff and acquisition of Valentec by NMT) | 10/19/99 | ATK | 21779 | 21780 |
| 30 | | | E-mail from Dooley to Greg Hawks re: NMT (prices) | 10/26/99 | ATK | 11740 | 11742 |
| 31 | | | Facsimile from John Finkbiner to Jeff Tardiff re: M9 Link Exception to Drawing | 10/26/99 | | | |
| 32 | | | E-mail from Noon re: National Metal Technologies (acquisition of Valentec confusion) | 11/01/99 | ATK | 21779 | 21780 |
| 33 | | | Raw Material Lots Received Report | 11/01/99 | ATK | 40587 | 40594 |
| 34 | | | TCAAP Link Business Brief to Make/Buy Board | 11/01/99 | ATK | 50740 | 50745 |
| 35 | | | Fax cover sheet to Jeff Tardiff from Alliant Techsystems | 11/01/99 | NMT | 22698 | 22738 |
| 36 | | | Link History | 11/01/99 | ATK | 241523 | 241523 |
| 37 | | | Letter from Rob Hoops to Jaff Tardiff re: ATK Request for Quotation | 11/05/99 | NMT | 98 | 98 |
| 38 | | | Lake City Purchase Order No. | 11/08/99 | | | |
| 39 | | | Letter from Lee Ann Murphy to Mike McCarthy | 11/11/99 | | | |
| 40 | | | E-mail to Holiday re: Lake City Quotation | 11/12/99 | ATK | 40723 | 40724 |
| 41 | | | TCAAP Link Business Brief to Make/Buy Board | 11/12/99 | ATK | 50740 | 50745 |

3

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 42 | | | Memo from Jeff Tardiff to David Cries re: Just in Time Provisioning Terms and Conditions | 11/22/99 | ATK | 100053 | 100053 |
| 43 | | | Memo to Rob Hoops from Jeff Tardiff | 11/24/99 | ATK | 21975 | 21976 |
| 44 | | | ATK Lake City Multi Year Quote with attachments | 11/24/99 | NMT | 25354 | 25379 |
| 45 | | | Memo Subject: Purchase Order Approval - Lake City | 11/30/99 | ATK | 40650 | 40651 |
| 46 | | | ATK Organization chart | 12/01/99 | ATK | 152336 | 152329 |
| 47 | | | E-mail to Holiday re: Authorization to Negotiate (CG Greene) | 12/06/99 | ATK | 40992 | 40993 |
| 48 | | | ATK Purchase Order handwritten (5%) | 12/17/99 | ATK | 21972 | 21972 |
| 49 | | | E-mail from Tardiff re: Preliminary "Should Cost" Targets | 12/17/99 | ATK | 31191 | 31191 |
| 50 | | | ATK Purchase Order (15%) | 12/17/99 | NMT | 25353 | 25353 |
| 51 | | | Fax Cover Sheet from Jeff Tardiff to Rob Hoops re: Lake City PO Agreement | 12/17/99 | ATK | 40720 | 40720 |
| 52 | | | Bartle letter to Hoops re: LCAAP Award with handwritten notes | 12/20/99 | ATK | 40964 | 40964 |
| 53 | | | Bartle (Valentec) letter re: LCAAP Award | 12/20/99 | ATK | 40964 | 40964 |
| 54 | | | E-mail from Kienzie re: Multi-Year Contract for LCAAP Links (use of NMT over Valentec) | 12/29/99 | ATK | 31192 | 31192 |

4

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 55 | | | E-mail with attachments NMT Trip Report | 01/01/00 | ATK | 241549 | 241553 |
| 56 | | | E-mail from David Crites to Marvetta Dooley re: NMT Note | 01/06/00 | ATK | 100704 | 100705 |
| 57 | | | Detail Specification MIL-DTL-16232G | 01/07/00 | ATK | 202675 | 202690 |
| 58 | | | ATK Memo NMT Assessment | 01/13/00 | ATK | 31155 | 31158 |
| 59 | | | ATK Memo Subject: NMT Assessment | 01/13/00 | ATK | 31155 | 31158 |
| 60 | | | Fax with Rolled Steel Pos | 01/17/00 | ATK | 21921 | 21925 |
| 61 | | | E-mail from Bill Noon to Rob Hoops re: NMT Trip Report | 01/18/00 | ATK | 11336 | 11338 |
| 62 | | | E-mail from Bill Noon to David Crites re: NMT Trip Report | 01/18/00 | ATK | 30830 | 30832 |
| 63 | | | E-mail from Bill Noon to Kent Holiday re: Assessment of NMT with attachment | 01/19/00 | ATK | 21770 | 21774 |
| 64 | | | E-mail from Bill Noon to Rob Hoops re: 5.56 & 7.62mm Dummy rounds | 01/20/00 | ATK | 21937 | 21937 |
| 65 | | | NMT Memo to Distribution from Pat Moore | 01/21/00 | NMT | 1355 | 1355 |
| 66 | | | Letter to Marcos re: contingency plans for M27 and M13 small caliber links | 01/25/00 | ATK | 40961 | 40963 |
| 67 | | | E-mail from David Crites to Ken Burton re: trip report on NMT with attachment | 01/26/00 | ATK | 241549 | 241553 |
| 68 | | | E-mail to Webb re: Links Issue - Important Message (securing links from NMT and/or Valentec, the steel issue) | 02/01/00 | ATK | 31181 | 31183 |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 69 | | | Letter from Alperson (Rolled Steel) NMT re: Alliant Techsystems Purchase Guarantee | 02/01/00 | ATK | 40709 | 40709 |
| 70 | | | Letter from Robert Hoops to Lonnie B. Alperson | 02/02/00 | RS | 65 | 65 |
| 71 | | | Letter from Robert Hoops to Lonnie B. Alperson | 02/02/00 | RS | 66 | 66 |
| 72 | | | ATK Letter from Hoops re: Alliant Techsystems Purchase | 02/02/00 | RS | 66 | 66 |
| 73 | | | ATK Letter to Alperson (Rolled Steel) Alliant Techsystems Purchase Guarantee | 02/02/00 | | | |
| 74 | | | Letter from Robert Hoops to Lonnie B. Alperson | 02/07/00 | RS | 64 | 64 |
| 75 | | | Letter from Alperson (Rolled Steel) to NMT re: Material Status on Link Material; M-13 Steel Requirements (quote); M-27 Steel Requirements (quote) | 02/08/00 | ATK | 40705 | 40707 |
| 76 | | | Fax Cover sheet from Lonnie B. Alperson to Jeff Tardiff and attachment | 02/08/00 | RS | 60 | 63 |
| 77 | | | Fax Cover sheet from Lonnie B. Alperson to Jeff Tardiff | 02/08/00 | RS | 67 | 68 |
| 78 | | | Letter to Jeff Tardiff from Robert Hoops | 02/10/00 | ATK | 40696 | 40696 |

6

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 79 | | | Letter to Tardiff re: Delinquency of Contract | 02/10/00 | ATK | 40696 | 40704 |
| 80 | | | E-mail from DeYoung re: Links (NMT plans and capability) | 02/14/00 | ATK | 31160 | 31161 |
| 81 | | | Letter to Robert Hoops from Jeff Tardiff | 02/18/00 | ATK | 40692 | 40692 |
| 82 | | | Letter from Tardiff re: response to letter of 2/10, March 15 delivery schedule for M13 and M27 links | 02/18/00 | NMT | 114 | 115 |
| 83 | | | Quote to Jeff Tardiff | 02/25/00 | NMT | 112 | 112 |
| 84 | | | E-mail from David Crites to Marvetta Dooley re: NMT Shipments | 02/28/00 | ATK | 100692 | 100692 |
| 85 | | | E-mail to Crites from Hoops re: Valentec Bankruptcy | 03/02/00 | ATK | 100193 | 100193 |
| 86 | | | Valentec letter from Bartle to Finkbiner re: Release AO2548 for M27 Links | 03/15/00 | ATK | 270047 | 270047 |
| 87 | | | Letter from Rob Hoops to Jeff Tardiff re: purchase order administration transfer to Finkbiner | 03/22/00 | NMT | 121 | 121 |
| 88 | | | Raw Material Lots Received Report 4/1/00-4/2/001 | 04/01/00 | ATK | 110074 | 110078 |
| 89 | | | Raw Material Lots Received Report 4/1/00-4/2/001 | 04/01/00 | ATK | 110068 | 110070 |
| 90 | | | Fax to Jeff Tardiff from John Finkbiner | 04/12/00 | ATK | 50754 | 50754 |
| 91 | | | Alliant Ammunition Systems Co. LLC Operation Analysis Mar-00 | 04/13/00 | ATK | 140511 | 140562 |

7

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 92 | | | Fax transmittal from Ed Carpenter to John Finkbiner re: M-27 First Article Test Report 4/12/00 with attachment | 04/17/00 | ATK | 40537 | 40540 |
| 93 | | | Raw Material Inspection Report | 04/17/00 | ATK | 50670 | 50670 |
| 94 | | | E-mail from John Finkbiner to Jeff Tardiff re: Pilot lot inspection | 04/19/00 | ATK | 40657 | 40657 |
| 95 | | | Receiving Inspection Rejectable Nonconformance Material Report | 04/20/00 | ATK | 30275 | 30275 |
| 96 | | | E-mail from John Finkbiner to Jeff Tardiff re: Delivery Date/quantity change request for M9 Links | 04/24/00 | NMT | 127 | 127 |
| 97 | | | E-mail from John Finkbiner to Larry Smith re: NMT M27 Links | 05/01/00 | ATK | 42169 | 42169 |
| 98 | | | Memorandum of Visit | 05/02/00 | ATK | 40654 | 40655 |
| 99 | | | Raw Material Inspection Report | 05/02/00 | ATK | 30550 | 30550 |
| 100 | | | Certificate of Conformance | 05/04/00 | NMT | 20984 | 20975 |
| 101 | | | Certificate of Conformance | 05/04/00 | ATK | 30555 | 30553 |
| 102 | | | Receiving Inspection Rejectable Nonconformance Material Report | 05/08/00 | ATK | 30248 | 30248 |
| 103 | | | Receiving Inspection Rejectable Nonconformance Material Report | 05/09/00 | ATK | 30228 | 30228 |
| 104 | | | Receiving Worksheet | 05/15/00 | ATK | 270741 | 270764 |
| 105 | | | Receiving Worksheet | 05/15/00 | ATK | 274902 | 274931 |
| 106 | | | Receiving Inspection Rejectable Nonconformance Material Report | 05/16/00 | ATK | 30214 | 30214 |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 107 | | | Receiving Inspection Rejectable Nonconformance Material Report | 05/17/00 | ATK | 30286 | 30286 |
| 108 | | | E-mail from Larry Smith to John Finkbiner re: M27 link sample from NMT | 05/22/00 | ATK | 42172 | 42172 |
| 109 | | | Memo from H.E. Cook to K. Harshner re: Letter of Instructions for First Article Inspection of Links, M27, 5.56MM, 8352 (BB80805) | 05/24/00 | ATK | 40400 | 40400 |
| 110 | | | E-mail from John Finkbiner to Larry Smith re: M27 Link First Article - Second lot | 05/24/00 | ATK | 42173 | 42173 |
| 111 | | | E-mail from Ed Carpenter to Howard Cook re: M-27 First Article | 05/24/00 | ATK | 40465 | 40465 |
| 112 | | | Letter from J.B. Finkbiner to Ed Carpenter re: Purchase Order No. LC001 | 05/25/00 | ATK | 40908 | 40915 |
| 113 | | | Receiving Worksheet | 05/30/00 | ATK | 270765 | 270782 |
| 114 | | | National Metal Technology Link Analysis | 05/30/00 | ATK | 40107 | 40107 |
| 115 | | | Receiving Worksheet | 05/30/00 | ATK | 40835 | 40835 |
| 116 | | | E-mail to John Finkbiner from Jeff Tardiff | 06/01/00 | NMT | 1035 | 1035 |
| 117 | | | Raw Material Inspection Report | 06/01/00 | ATK | 40801 | 40801 |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 118 | | | E-mail from Finkbiner to Jeff Tardiff re: production sample M-27 with front and rear dia loops changes | 06/01/00 | NMT | 132 | 132 |
| 119 | | | E-mail from Ed Carpenter to Michael Lodge re: M-27 Links design review | 06/05/00 | ATK | 40404 | 40404 |
| 120 | | | National Metal Technologies Link Delivery Analysis | 06/06/00 | ATK | 40123 | 40132 |
| 121 | | | E-mail from Michael Lodge to Howard Cook re: M-27 Links Design review | 06/07/00 | ATK | 40466 | 40466 |
| 122 | | | Letter to Patrick Moore | 06/08/00 | NMT | 1356 | 1356 |
| 123 | | | Letter to John Corey from Pat Moore | 06/08/00 | NMT | 1369 | 1372 |
| 124 | | | Certificate of Conformance | 06/09/00 | ATK | 30134 | 30149 |
| 125 | | | Raw Material Inspection Report | 06/14/00 | ATK | 40808 | 40808 |
| 126 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/15/00 | ATK | 30150 | 30150 |
| 127 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/15/00 | ATK | 50662 | 50662 |
| 128 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/15/00 | ATK | 50664 | 50664 |
| 129 | | | Raw Material Inspection Report | 06/15/00 | ATK | 40807 | 40807 |
| 130 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/15/00 | ATK | 40806 | 40806 |
| 131 | | | Certificate of Conformance | 06/16/00 | ATK | 30114 | 30130 |
| 132 | | | Memo to Mike Marcos (Valentec) from Pat Moore | 06/24/00 | NMT | 1373 | 1378 |

10

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 133 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/27/00 | ATK | 50661 | 50661 |
| 134 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/27/00 | ATK | 30108 | 30109 |
| 135 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/27/00 | ATK | 40805 | 40805 |
| 136 | | | Memo from Jeff Tardiff to Larry Smith re: Status on Small Caliber Link Production | 06/27/00 | NMT | 172 | 172 |
| 137 | | | E-mail from Ron Alberto to John Sowa re: LCAAP WAR | 06/28/00 | ATK | 221154 | 221156 |
| 138 | | | Memo from Jeff Tardiff to Larry Smith re: Status on Small Caliber Link Production | 06/28/00 | ATK | 40469 | 40469 |
| 139 | | | E-mail from Dooley re: LW Ammo Strip Order | 06/29/00 | ATK | 22155 | 22155 |
| 140 | | | E-mail from Dooley re: LW30 Ammo Strip Order | 06/29/00 | ATK | 22155 | 22155 |
| 141 | | | 1st Quarter AFY01 Estimate at Completion Executive Overview June 29, 2000 | 06/29/00 | ATK | 130126 | 130157 |
| 142 | | | Estimate at Completion | 06/29/00 | ATK | 240678 | 240697 |
| 143 | | | Receiving Inspection Rejectable Nonconformance Material Report | 06/29/00 | ATK | 30174 | 30174 |
| 144 | | | E-mail from Jim Krawczyk to Larry Smith re: M27 Link Update | 06/30/00 | ATK | 42179 | 42179 |

11

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 145 | | | Letter to John C. Corey | 07/10/00 | | | |
| 146 | | | Analysis of Unit Prices Using Learning Curve Analysis | | ATK | 11829 | 11830 |
| 147 | | | Raw Material Work Test Sample | 07/11/00 | ATK | 30110 | 301136 |
| 148 | | | Raw Material Inspection Report | 07/11/00 | ATK | 30133 | 30133 |
| 149 | | | Receiving Inspection Rejectable Nonconformance Material Report | 07/11/00 | ATK | 30132 | 30132 |
| 150 | | | Receiving Inspection Rejectable Nonconformance Material Report | 07/11/00 | ATK | 40804 | 40804 |
| 151 | | | Receiving Inspection Rejectable Nonconformance Material Report | 07/11/00 | ATK | 50660 | 50660 |
| 152 | | | Purchase Order T10365 | 07/12/00 | ATK | 11809 | 11817 |
| 153 | | | Certificate of Conformance | 07/14/00 | NMT | 21006 | 21005 |
| 154 | | | Certificate of Conformance | 07/14/00 | ATK | 30517 | 30546 |
| 155 | | | Valentec Links Acquisition | 07/20/00 | ATK | 60173 | 60180 |
| 156 | | | E-mail from Jim Krawczyk to Larry Smith re: M27 Link | 07/20/00 | ATK | 42180 | 42180 |
| 157 | | | Receiving Inspection Rejectable Nonconformance Material Report | 07/20/00 | ATK | 30510 | 30516 |
| 158 | | | Letter to Nels R. Leutwiler | 07/25/00 | | | |
| 159 | | | National Metal Technologies, Inc. M9 Taper of Body Loop CD114 | 07/27/00 | ATK | 30095 | 30105 |
| 160 | | | Phone Conference ATK Krawczyk, Lodge, Finkbiner, & Smith - NMT Tardiff, Wilson, McCarthy, Blea & Carpenter re: M13 Link Design Review | 07/27/00 | NMT | 173 | 173 |

12

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 161 | | | E-mail to Pat Moore from Jeff Tardiff | 07/30/00 | NMT | 1014 | 1014 |
| 162 | | | E-mail from John Finkbiner to Larry Smith re: M13/M27 Update | 07/31/00 | ATK | 42181 | 42181 |
| 163 | | | Letter to Nels R. Leutwiler | 08/02/00 | | | |
| 164 | | | E-mail from Michael Lodge to Larry Smith re: NMT Activities | 08/09/00 | ATK | 42187 | 42189 |
| 165 | | | E-mail from Larry Smith to John Finkbiner re: Link Update | 08/14/00 | ATK | 40443 | 40443 |
| 166 | | | Letter to Pat Moore from John Corey | 08/16/00 | NMT | 1363 | 1368 |
| 167 | | | Letter to Jeff Tardiff from Larry Smith | 08/17/00 | | | |
| 168 | | | Letter from Gregory A. Hawks to Lonnie B. Alperson | 08/21/00 | RS | 53 | 53 |
| 169 | | | ATK Letter from Hawks to Alperson re: Alliant Techsystems Purchase Guarantee | 08/21/00 | RS | 53 | 53 |
| 170 | | | Rejectable Non-Conforming Material Report | 08/22/00 | ATK | 30090 | 30092 |
| 171 | | | Letter from Kent Holiday to Lonnie Alperson | 08/28/00 | ATK | 40882 | 40882 |
| 172 | | | Letter from Kent D. Holiday to Lonnie B. Alperson | 08/28/00 | RS | 52 | 52 |
| 173 | | | ATK Letter from Hawks to Alperson re: Alliant LCSCAC LLC Purchase Agreement | 08/28/00 | RS | 52 | 52 |
| 174 | | | Industrial Committee of Ammunition Producers Meeting Minutes | 08/31/00 | | | |

13

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 175 | | | Letter from L.H. Smith to Jeff Tardiff | 09/06/00 | ATK | 31132 | 31133 |
| 176 | | | Certificate of Conformance | 09/06/00 | NMT | 21019 | 21018 |
| 177 | | | E-mail from Ferryl Simpson to Larry Smith re: M13 Links, GFM, Stored at Hawthorne | 09/06/00 | ATK | 42199 | 42200 |
| 178 | | | Certificate of Conformance | 09/08/00 | NMT | 20770 | 20777 |
| 179 | | | Certificate of Conformance | 09/08/00 | ATK | 30327 | 30354 |
| 180 | | | Purchase Order | 09/12/00 | ATK | 260444 | 260449 |
| 181 | | | Letter to Jeff Tardiff from Sue Bartle | 09/12/00 | NMT | 160 | 160 |
| 182 | | | E-mail from Ron Alberto to Robert Crawford re: LCAAP WAR (13 Sep 00) | 09/13/00 | ATK | 221144 | 221145 |
| 183 | | | E-mail from Darlene Smith to Kevin Nicholson, et al. re: Communication Items | 09/13/00 | ATK | 221146 | 221146 |
| 184 | | | Receiving Inspection Rejectable Nonconformance Material Report | 09/19/00 | ATK | 30312 | 30326 |
| 185 | | | E-mail from John Finkbiner to Larry Smith re: NMT Response | 09/20/00 | ATK | 42204 | 42205 |
| 186 | | | E-mail to Michael Lodge from Jim Krawczyk | 09/22/00 | ATK | 40436 | 40439 |
| 187 | | | Letter from Lonnie B. Alperson to Jeff Tardiff | 09/26/00 | RS | 50 | 51 |
| 188 | | | ATK Overview by: Pat Nolan, President Ammunition & Powder Company LLC | 09/27/00 | ATK | 41034 | 41054 |

14

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 189 | | | Letter to Sue Bartle from Jeff Tardiff | 09/28/00 | NMT | 12398 | 12398 |
| 190 | | | Raw Material Inspection Report | 10/02/00 | ATK | 30064 | 30065 |
| 191 | | | Certificate of Conformance | 10/02/00 | ATK | 30357 | 30367 |
| 192 | | | Certificate of Conformance | 10/02/00 | NMT | 20761 | 20768 |
| 193 | | | Receiving Inspection Rejectable Nonconforming Material Report | 10/03/00 | ATK | 30063 | 30063 |
| 194 | | | Receiving Inspection Rejectable Nonconforming Material Report | 10/04/00 | ATK | 30355 | 30356 |
| 195 | | | Purchase Order | 10/04/00 | ATK | 260450 | 260452 |
| 196 | | | Certificate of Conformance | 10/06/00 | NMT | 20779 | 20787 |
| 197 | | | Letter from Lonnie B. Alperson to Jeff Tardiff | 10/06/00 | RS | 49 | 49 |
| 198 | | | Certificate of Conformance | 10/13/00 | NMT | 21034 | 21034 |
| 199 | | | Letter from Lonnie B. Alperson to Larry Smith | 10/14/00 | RS | 42 | 42 |
| 200 | | | Certificate of Conformance | 10/18/00 | ATK | 21088 | 21190 |
| 201 | | | Strategic Planning Kickoff and Huddle Meeting 18 & 19 October 2000 Pat Nolan Alliant Ammunition and Power Company LLC | 10/18/00 | ATK | 240812 | 240830 |
| 202 | | | Certificate of Conformance | 10/20/00 | NMT | 21047 | 21046 |
| 203 | | | Certificate of Conformance | 10/24/00 | NMT | 21060 | 21059 |
| 204 | | | Memo from John Wilson to Jeff Tardiff re: M9 Rejections From Lake City AAP | 11/04/00 | ATK | 42110 | 42110 |
| 205 | | | Memorandum of Visit | 11/09/00 | ATK | 40472 | 40473 |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 206 | | | E-mail from Finkbiner to Bruce Webb | 11/09/00 | ATK | 260465 | 260467 |
| 207 | | | Receiving Inspection Rejectable Nonconformance Material Report | 11/10/00 | ATK | 40545 | 40545 |
| 208 | | | Fax cover sheet from Jeff Tardiff to Kent Holiday | 11/10/00 | SYK | 50017 | 50019 |
| 209 | | | Receiving Inspection Rejectable Nonconformance Material Report | 11/14/00 | ATK | 30045 | 30045 |
| 210 | | | Receiving Inspection Rejectable Nonconformance Material Report | 11/14/00 | ATK | 50676 | 50676 |
| 211 | | | Precision Sheet and Strip Steel | 11/14/00 | ATK | 110040 | 11040 |
| 212 | | | Receiving Inspection Rejectable Nonconformance Material Report | 11/15/00 | ATK | 40548 | 40548 |
| 213 | | | E-mail to Gunelson re: Payables Review | 11/16/00 | ATK | 21903 | 21905 |
| 214 | | | Receiving Inspection Rejectable Nonconformance Material Report | 11/16/00 | ATK | 30756 | 30756 |
| 215 | | | E-mail from Tom Herman to Jim Kawczyk re: NMT LINKS | 11/16/00 | ATK | 40597 | 40597 |
| 216 | | | Certificate of Conformance | 11/16/00 | NMT | 26362 | 26453 |
| 217 | | | Discrepant Material Report | 11/16/00 | | | |
| 218 | | | Letter from Sue Bartle to John Finkbiner | 11/17/00 | ATK | 60036 | 60037 |
| 219 | | | E-mail to Hawks, Weinmann, Dimitroff re: NMT employee whose name cannot be mentioned | 11/21/00 | ATK | 10081 | 10081 |
| 220 | | | E-mail from Jim Weinmann to Steve Neubauer re: NMT | 11/21/00 | ATK | 11160 | 11161 |

16

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 221 | | | E-mail from Penn to Crites re: M728 Links (if NMT dropped) | 11/21/00 | ATK | 30869 | 30869 |
| 222 | | | Daily Record of Events | 11/21/00 | ATK | 50151 | 50162 |
| 223 | | | Handwritten notes NMT Link Meeting | 11/21/00 | ATK | 110407 | 110409 |
| 224 | | | E-mail from Jim Wenmann to Bill Noon re: 25MM Links from NMT | 11/22/00 | ATK | 21398 | 21399 |
| 225 | | | E-mail from Hawks to Gunelson re: Stop Payment | 11/22/00 | ATK | 21910 | 21910 |
| 226 | | | E-mail from Crites re: 25MM Links from NMT | 11/22/00 | ATK | 70257 | 70257 |
| 227 | | | E-mail from David Crites to Jim Weinmann re: National Metal Technologies | 11/22/00 | ATK | 100160 | 100160 |
| 228 | | | E-mail from David Crites to Randy Wisian, et al. re: purchase history of NMT | 11/22/00 | ATK | 100163 | 100163 |
| 229 | | | E-mail to Crites, Dooley re: NMT Invoice Payment | 11/22/00 | ATK | 100177 | 100177 |
| 230 | | | E-mail from Bill Noon to David Crites re: NMT Links Telecom Summary | 11/22/00 | ATK | 100178 | 100178 |
| 231 | | | E-mail from Noon re: NMT Invoice Payment (stopped check) | 11/22/00 | ATK | 100682 | 100682 |
| 232 | | | E-mail from David Crites to Steve Farley re: NMT Links | 11/22/00 | ATK | 100682 | 100682 |
| 233 | | | E-mail from David Crites to Steve Farley re: NMT | 11/22/00 | ATK | 100685 | 100685 |

17

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 234 | | | E-mail from Steve Farley to Susan Smith re: Potential Issues with NMT Links | 11/24/00 | ATK | 90223 | 90224 |
| 235 | | | Handwritten notes | 11/27/00 | ATK | 10865 | 10877 |
| 236 | | | Handwritten notes re: Hardness Testing | 11/27/00 | ATK | 50251 | 50266 |
| 237 | | | Receiving Inspection Rejectable Nonconforming Material Report | 11/28/00 | ATK | 30419 | 30419 |
| 238 | | | Receiving Inspection Rejectable Nonconforming Material Report | 11/28/00 | ATK | 40546 | 40546 |
| 239 | | | E-mail from Steve Farley to Susan Smith re: National Metal Technologies | 11/28/00 | ATK | 90230 | 90231 |
| 240 | | | Purchase Order | 11/28/00 | ATK | 260453 | 260455 |
| 241 | | | Sampling of NMT lot at NB 502 on 11/29/00 | 11/29/00 | ATK | 11567 | 11572 |
| 242 | | | E-mail from John Finkbiner to Larry Smith and Mark DeYoung re: Link Update | 11/29/00 | ATK | 42216 | 42216 |
| 243 | | | Inspection Request for Laboratory Services | 11/29/00 | ATK | 70411 | 70411 |
| 244 | | | Fax cover sheet from Lonnie B. Alperson to Patrick Moore and attachment | 11/29/00 | RS | 37 | 41 |
| 245 | | | E-mail to Dimitroff, Noon, and Delaney from Joe Yeakley | 11/30/00 | ATK | 21416 | 21418 |
| 246 | | | Handwritten notes | 11/30/00 | ATK | 110041 | 110041 |

18

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 247 | | | E-mail from Stephens to Yeakley, et al. re: 25mm Link Assembly Hardness | 12/01/00 | ATK | 21210 | 21210 |
| 248 | | | E-mail to Yeakley, Dimitroff, Olson, Lundgren, Farley from Dennis Stephens | 12/01/00 | ATK | 21210 | 21211 |
| 249 | | | Memo from John Wilson to Jeff Tardiff re: Hardness Retesting of 10 Piece Subject Sample From ATK/Lake City 50 Cal. M9 Lot No. NMT 00K001-009 | 12/01/00 | ATK | 40561 | 40561 |
| 250 | | | E-mail from Weinmann re: M28 Links - TCAAP portion of Lot 68 | 12/07/00 | ATK | 21420 | 21420 |
| 251 | | | Fax cover sheet from Ed Hetzel (Primex Technologies) to Steve Farley re: Information | 12/07/00 | ATK | 50188 | 50190 |
| 252 | | | E-mail from Parrish re: Link test status at NMT | 12/08/00 | ATK | 100180 | 100180 |
| 253 | | | Fax cover sheet from Ed Carpenter to Kathleen Lund re: M28 Product Audit | 12/11/00 | ATK | 11708 | 11709 |
| 254 | | | E-mail from Dimitroff to Bill Noon re:NMT M28 Link Trip Report | 12/11/00 | ATK | 22136 | 22136 |
| 255 | | | E-mail to Noon and Lund from Dimitroff | 12/11/00 | ATK | 22136 | 22136 |
| 256 | | | E-mail with attachment NMT Observations ATK02196-8 | 12/11/00 | ATK | 40431 | |
| 257 | | | E-mail from Larry Smith to Jim Krawczyk, et al. | 12/11/00 | ATK | 40565 | 40565 |

19

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 258 | | | E-mail from Lund with attachment re: NMT Observations | 12/11/00 | ATK | 70261 | 70264 |
| 259 | | | E-mail to Dimitroff, Neubauer, Rasmussen, Noon, Parrish, Phillips, Farley, Krawczyk, Osgood from Parrish | 12/11/00 | ATK | 70261 | 70264 |
| 260 | | | Memorandum from D.H. Crites to Ken Burton re: Trip to NMT | 12/13/00 | ATK | 30784 | 30785 |
| 261 | | | E-mail from Neubauer to Susan Smith, et al. re: Raw Data 25MM Link Ass'y Hardness Testing | 12/13/00 | ATK | 90247 | 90253 |
| 262 | | | E-mail from Neubauer re: Raw Data 25MM Link Ass'y Hardness Testing | 12/13/00 | ATK | 90254 | 90255 |
| 263 | | | E-mail from Daniel Delaney to Bill Noon re: Raw Data 25mm Link Ass'y Hardness Testing | 12/14/00 | ATK | 21426 | 21434 |
| 264 | | | E-mail to Neubauer, Dimitroff from Bill Noon re: NMT Links - hardness test | 12/14/00 | ATK | 21747 | 21747 |
| 265 | | | E-mail to Neubauer, Dimitroff from Bill Noon re: NMT Links - hardness test | 12/14/00 | ATK | 21747 | 21747 |
| 266 | | | E-mail to Neubauer and Dimitroff from Noon | 12/14/00 | ATK | 21747 | 21747 |
| 267 | | | Letter from Kent Holiday to Bill Grivas | 12/14/00 | ATK | 42126 | 42126 |
| 268 | | | Draft Test Plan to Assess Functionality of M28 Links and Pivots with Below Spec Hardness | 12/15/00 | A | 11397 | 11397 |

20

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 269 | | | E-mail from Stephens re: raw Data, 25mm Link Ass'y Hardness Testing | 12/15/00 | ATK | 21344 | 21345 |
| 270 | | | E-mail to Neubauer re: NMT Links (requesting lot 70) | 12/15/00 | ATK | 21800 | 21800 |
| 271 | | | E-mail from Bill Noon to Steve Neubauer, et al. re: NMT Links | 12/15/00 | ATK | 21800 | 21800 |
| 272 | | | Memorandum from Pat Moore to Kent Holiday | 12/17/00 | ATK | 42119 | 42119 |
| 273 | | | E-mail from Ben Penn to Alan Parrish, et al. re: M28 Links | 12/17/00 | ATK | 70273 | 70273 |
| 274 | | | E-mail from Ed Boston to Jim Bourdials, et al. re: Valentec Link Packaging | 12/18/00 | ATK | 40147 | 40147 |
| 275 | | | E-mail from David Crites to Kent Holiday | 12/18/00 | ATK | 100158 | 100158 |
| 276 | | | E-mail from Steve Neubauer re: Response to Updated 25mm Link and Ctg. Case Action Plan | 12/19/00 | ATK | 21272 | 21273 |
| 277 | | | E-mail from Brian Paris to Dennis Stephens, et al. re: 25mm Links | 12/20/00 | ATK | 11062 | 11064 |
| 278 | | | E-mail from Edlund (RIA) re: Draft "Soft" Link Functional Acceptability Test Plan for Comment | 12/20/00 | ATK | 22158 | 22159 |
| 279 | | | E-mail from Dale Dimitroff to Susan Smith re: Hardness Testing of Lot 070 Links at New Brighton | 12/20/00 | ATK | 90289 | 90289 |

21

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 280 | | | E-mail from David Crites to Joe Schaub re: NMT M28 Link Status | 12/20/00 | ATK | 100156 | 100157 |
| 281 | | | E-mail to Crites, Dooley re: Conference Call with NMT on Correlation of Hardness Test Data | 12/22/00 | ATK | 22097 | 22097 |
| 282 | | | E-mail from Stephens re: Conference Call with NMT on Correlation of Hardness Test data | 12/22/00 | ATK | 70289 | 70289 |
| 283 | | | E-mail from Steve Farley to David Geiss re: Link Assy (p/n 12013213) lot NMT00J005-068 | 12/22/00 | ATK | 90296 | 90217; 90218 |
| 284 | | | E-mail from Jeffrey Ledbetter to Munson re: 25MM M28 Links for Turkey Commercial contract | 12/27/00 | ATK | 21205 | 21205 |
| 285 | | | Fax cover sheet from Bill Noon to Marvetta Dooley re: Invoices from NMT with attachment | 12/27/00 | ATK | 21618 | 21622 |
| 286 | | | E-mail from Dooley re: payment of NMT invoices | 12/27/00 | ATK | 22148 | 22148 |
| 287 | | | E-mail from Dooley re: invoices | 12/27/00 | ATK | 22148 | 22148 |
| 288 | | | E-mail from Dooley re: NMT (invoicing for Lot 68, NMT and bankruptcy) | 12/27/00 | ATK | 22149 | 22150 |
| 289 | | | E-mail to John Wilson from Alan Parrish | 12/27/00 | NMT | 865 | 866 |
| 290 | | | E-mail from Dennis Stephens to Susan Smith, et al. re: NMT M28 Link Status, Lot 70 with attachment | 12/28/00 | ATK | 21300 | 21310 |

22

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 291 | | | Letter from Sandra Wick to Department of the Army, Diane Eichom re: Request for Services, Return of ATK Ammunition Links (Revision) | 12/29/00 | ATK | 20674 | 20674 |
| 292 | | | E-mail from Dennis Stephens to Steve Farley, Steve Neubauer re: Soft link tests | 12/29/00 | ATK | 90315 | 90318 |
| 293 | | | E-mail from John Finkbiner to Larry Smith and Mike Pugliese | 01/02/01 | ATK | 42225 | 42227 |
| 294 | | | E-mail from David Crites to Marvetta Dooley | 01/03/01 | ATK | 30852 | 30852 |
| 295 | | | E-mail from James Sutherland to David Crites re: National Metal Technologies | 01/04/01 | ATK | 30910 | 30910 |
| 296 | | | E-mail from Dale Dimitroff to Susan Smith re: 25mm Link test at OSC | 01/05/01 | ATK | 90327 | 90327 |
| 297 | | | E-mail from Gerlad Holm to David Crites | 01/05/01 | ATK | 30915 | 30915 |
| 298 | | | Certificate of Conformance | 01/06/01 | | | |
| 299 | | | Link Production Plan Downey Operations | 01/09/01 | ATK | 201370 | 201377 |
| 300 | | | E-mail from Farley with attachment re: Summary of Hardness Test Investigation | 01/12/01 | ATK | 90329 | 90331 |
| 301 | | | E-mail from Farley to Parrish | 01/12/01 | ATK | 90329 | 90331 |
| 302 | | | E-mail from Neubauer with attachment re: Rock Island Soft Link Test | 01/12/01 | ATK | 90332 | 90333 |
| 303 | | | E-mail from Neubauer to Parrish, et al. | 01/12/01 | ATK | 90332 | 90333 |

23

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 304 | | | Raw Material Inspection Report | 01/12/01 | ATK | 274239 | 274262 |
| 305 | | | E-mail from Bill Noon to Dale Dimitroff re: Status of Waiver for M28 Link Lots | 01/12/01 | ATK | 21716 | 21716 |
| 306 | | | Invoice to ATK | 01/12/01 | NMT | 237 | 238 |
| 307 | | | E-mail from Steve Farley to Susan Smith re: Summary of Hardness Test Investigation | 01/12/01 | ATK | 90329 | 90331 |
| 308 | | | E-mail from Mark Dawson to Dave Pojmann re: Location for Valentec in Building 2 | 01/15/01 | ATK | 221119 | 221120 |
| 309 | | | E-mail from Dennis Stephens to Penny Burns re: Lot 070 Link hardness data | 01/15/01 | ATK | 10973 | 10975 |
| 310 | | | E-mail from Dennis Stephens to Steve Neubauer re: M&PE Hardness Charts & Tables | 01/16/01 | ATK | 10938 | 10941 |
| 311 | | | E-mail from Dennis Stephens to Penny Burns re: Link Presentation (1-17-01).ppt | 01/16/01 | ATK | 10942 | 10943 |
| 312 | | | E-mail from Alan Parrish to Susan Smith re: Link Presentation (1-17-01).ppt | 01/16/01 | ATK | 90360 | 90361 |
| 313 | | | E-mail from Bill Noon to Ken Sarkela re: 25MM M28 Links for Turkey Commercial Contract | 01/18/01 | ATK | 21201 | 21203 |
| 314 | | | E-mail to Crites re: NMT Trip Report | 01/18/01 | ATK | 30830 | 30832 |
| 315 | | | E-mail from Neubauer re: MCA Link Status Review at OSC | 01/18/01 | ATK | 90366 | 90366 |

24

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 316 | | | E-mail from Bill Noon to Greg Hawks re: NMT payment, PO T10365 | 01/19/01 | ATK | 11775 | 11775 |
| 317 | | | E-mail from Bill Noon to Greg Hawks RE: NMT Link Investigation | 01/19/01 | ATK | 21784 | 21784 |
| 318 | | | E-mail from Steve Neubauer to Bill Noon re: Link Test charges | 01/19/01 | ATK | 10924 | 10924 |
| 319 | | | Fax cover sheet to Jeff Tardiff from Greg Hawks | 01/22/01 | ATK | 11895 | 11895 |
| 320 | | | E-mail from Tim McFarland to Michael Lodge re: Hardness testing of small caliber links | 01/22/01 | ATK | 40402 | 40403 |
| 321 | | | Fax cover sheet from Larry E. Moine to Lonnie Alperson and attachment | 01/25/01 | RS | 29 | 32 |
| 322 | | | E-mail to Hawks re: Check for Lot 67 links, PO T10365 | 01/29/01 | ATK | 21782 | 21782 |
| 323 | | | Letter to David Crites from Pat Moore | 01/31/01 | ATK | 31423 | 31423 |
| 324 | | | E-mail from David Geiss re: Links | 02/01/01 | ATK | 100251 | 100146; 100147 |
| 325 | | | Document to Glen Dell and Wayne Stabile from Lyle Jensen re: SDE/Synergy/Incremental benefits Analysis (Highly Confidential) | 02/01/01 | | | |
| 326 | | | Document to Glen Dell and Wayne Stabile from Lyle Jensen re: Maplewood Return on Investment Analysis (Highly Confidential) | 02/06/01 | | | |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 327 | | | Correspondence to Pat Moore from Lyle Jensen Re: Non-Binding Letter of Intent | 02/16/01 | NMT | 264 | 270 |
| 328 | | | Letter to Pat Moore regarding Non-Binding Letter of Intent | 02/16/01 | NMT | 264 | 270 |
| 329 | | | Letter Agreement between Patrick Moore and Lyle Jensen (Confidential) | 02/16/01 | NMT | 264 | 270 |
| 330 | | | E-mail from Noon re: Valentec Settlement Agreement | 02/20/01 | ATK | 21364 | 21364 |
| 331 | | | Letter from Kent Holiday to Bill Grivas | 02/28/01 | ATK | 42127 | 42127 |
| 332 | | | Letter to Bill Grivas from Kent Holiday | 02/28/01 | NMT | 274 | 274 |
| 333 | | | E-mail from Webb with attachment Links Supply Status and Risk Mitigation | 03/02/01 | ATK | 221062 | 221068 |
| 334 | | | E-mail from Smith re: NMT Trip Report March 7 & 8 | 03/20/01 | ATK | 22224 | 22225 |
| 335 | | | E-mail re: SIPR Defense Links | 03/20/01 | ATK | 221045 | 221046 |
| 336 | | | Letter to Pat Moore from Mr. Crites | 03/26/01 | ATK | 312145 | 31248 |
| 337 | | | ATK Invoice to Valentec | 03/28/01 | ATK | 40929 | 40929 |
| 338 | | | Raw Material Lots Received Report | 04/02/01 | ATK | 110074 | 110078 |
| 339 | | | Requirements Contract | 04/09/01 | ATK | 607001 | 60745 |
| 340 | | | Moore letter to McManus re: links Production | 04/15/01 | ATK | 30565 | 30566 |
| 341 | | | Purchase Order | 04/16/01 | ATK | 260456 | 260458 |
| 342 | | | Receiving Worksheet | 05/03/01 | ATK | 274799 | 274834 |
| 343 | | | E-mail from Krawczyk re: M13 First Article Production | 05/04/01 | ATK | 200982 | 200982 |

26

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 344 | | | Letter from L.H. Smith to John Wilson | 05/07/01 | NMT | 302 | 303 |
| 345 | | | Receiving Worksheet | 05/10/01 | ATK | 276300 | 276325 |
| 346 | | | Letter from Pat Moore to L.H. Smith | 05/11/01 | NMT | 304 | 304 |
| 347 | | | Receiving Worksheet | 05/31/01 | ATK | 276360 | 276381 |
| 348 | | | E-mail from Neubauer re: Use of the Remainder of Lot 68 | 06/06/01 | ATK | 11093 | 11095 |
| 349 | | | E-mail from Dennis Stephens to Bill Noon re: M&PE Indentor Comparisons | 06/15/01 | ATK | 21885 | 21887 |
| 350 | | | ATK (Response) letter to Army re: Links Status | 06/20/01 | ATK | 60080 | 60081 |
| 351 | | | E-mail from Finkbiner with Attachment Links Status Report Updated 6-26 | 06/26/01 | ATK | 220839 | 220842 |
| 352 | | | E-mail re: Lake City Links (deteriorating quality) | 07/08/01 | ATK | 60024 | 60024 |
| 353 | | | E-mail re: Valentec Links (Valentec Situation) | 07/08/01 | ATK | 220772 | 220773 |
| 354 | | | E-mail from Neubauer re: Lot 68 Links | 07/10/01 | ATK | 90473 | 90475 |
| 355 | | | E-mail from Neubauer re: Use of the Remainder of Lot 68 (Government Authorization for Use) | 07/11/01 | ATK | 11084 | 11091 |
| 356 | | | E-mail from Farley to Smith | 07/14/01 | ATK | 90490 | 90492 |
| 357 | | | E-mail from Farley to Parrish, et al. | 07/18/01 | ATK | 100310 | 100312 |
| 358 | | | E-mail from Kathy Hunter to Michael; Lodge, et al. | 07/18/01 | ATK | 220683 | 220695 |
| 359 | | | ATK Memo History of Ammunition Links Project | 07/19/01 | ATK | 200898 | 200907 |

27

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 360 | | | Valentec Wells Link Production Assessment | 07/23/01 | ATK | 90166 | 90185 |
| 361 | | | Menezes Letter to DeYoung re: Assistance for Valentec | 08/06/01 | ATK | 60319 | 60320 |
| 362 | | | Agreement between Alliant LC SCA Co. and Valentec Wells | 08/10/01 | ATK | 50779 | 50781 |
| 363 | | | E-Mail from Crites "Anyone interested in cranking up NMT again?" | 08/14/01 | ATK | 100061 | 100064 |
| 364 | | | 12 Month Vendor Rating Report - NMT | 08/20/01 | ATK | 11648 | 11648 |
| 365 | | | E-mail from John Finkbiner to Kent Holiday | 08/20/01 | ATK | 41242 | 30418 |
| 366 | | | E-mail from Neubauer re: Auction of Link Equipment/Tooling | 08/23/01 | ATK | 11152 | 11153 |
| 367 | | | E-mail from Steve Neubauer to Mark DeYoung | 08/23/01 | ATK | 11153 | 11153 |
| 368 | | | E-mail from David Crites to Steve Neubauer | 08/24/01 | ATK | 241526 | 241528 |
| 369 | | | LC SCA Valentec Links Acquisition | 08/31/01 | ATK | 280046 | 280057 |
| 370 | | | Request for Waiver | 09/04/01 | ATK | 274021 | 274026 |
| 371 | | | Facsimile to Deb Moeschl from Kent Holiday | 09/18/01 | ATK | 70075 | 7077 |
| 372 | | | E-mail from Vlahakis re: Acquisition of Links Business | 09/29/01 | ATK | 21175 | 211726 |
| 373 | | | Receiving Worksheet | 10/02/01 | ATK | 274004 | 274040 |

28

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 374 | | | Industrial Committee of Amunition Producers Meeting | 11/29/01 | | | |
| 375 | | | ATK Purchase Order 063028 | 01/24/02 | Gen Dyn | 2478 | 2486 |
| 376 | | | General Dynamics Invoices | 02/06/02 | Gen Dyn | 2478 | 2486 |
| 377 | | | E-mail from Hawks re: Valentec Galion Divestiture | 02/14/02 | ATK | 211694 | 211695 |
| 378 | | | E-mail from Roger Nicklas to Michael Dolby, et al. | 02/15/02 | ATK | 211694 | 211695 |
| 379 | | | Letter to Major General Wade McManus from William Grivas | 04/08/02 | NMT | 414 | 414 |
| 380 | | | General Dynamics Invoices | 06/17/02 | Gen Dyn | 2524 | 2536 |
| 381 | | | Letter from Greg Goff to General Dynamics | 08/16/02 | ATK | 122371 | 122371 |
| 382 | | | Letter from Greg Goff to General Dynamics | 09/12/02 | ATK | 122366 | 122367 |
| 383 | | | E-mail  from Jim Krawczyk to John Finkbiner re: "Talon M9 Link" | 10/17/02 | | | |
| 384 | | | AK Stampiong Co. Quote No. 3336 BTS-ATK | 10/28/02 | ATK | 110306 | 110308 |
| 385 | | | Letter from Greg Goff to Charles Arehart re: M28 25mm Link Revised Quatation | 11/08/02 | ATK | 122360 | 122361 |
| 386 | | | E-mail from Jeff Wiechmann to Jim Krawczyk re:"Talon M13 Links" | 11/18/02 | | | |
| 387 | | | E-mail from Jim Krawczyk to  Larry Smith re: "Links | 12/17/02 | | | |

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 388 | | | E-mail from Neubauer re: M28 Link Purchase Order D10257 | 01/24/03 | ATK | 211674 | 211674 |
| 389 | | | E-mail from Steve Neubauer to Pat Nolan re: M28 Link Purchase Order D10257 | 02/14/03 | ATK | 211674 | 211674 |
| 390 | | | 4th Quarter AFY03 Estimate at Completion Review | 03/05/03 | ATK | 150987 | 151003 |
| 391 | | | General Dynamics Invoices | 04/01/03 | Gen Dyn | 2504 | 2514 |
| 392 | | | General Dynamics Invoices | 04/01/03 | Gen Dyn | 2515 | 2523 |
| 393 | | | ATK Purchase Order 064601 | 04/01/03 | Gen Dyn | 2515 | 2523 |
| 394 | | | ATK Purchase Order 65112 | 07/23/03 | Gen Dyn | 2471 | 2477 |
| 395 | | | ATK Purchase Order 065054 | 07/23/03 | Gen Dyn | 2487 | 2495 |
| 396 | | | ATK Purchase Order 065053 | 07/23/03 | Gen Dyn | 2496 | 2514 |
| 397 | | | General Dynamics Invoices | 07/31/03 | Gen Dyn | 2471 | 2477 |
| 398 | | | General Dynamics Invoices | 07/31/03 | Gen Dyn | 2487 | 2495 |
| 399 | | | General Dynamics Invoices | 07/31/03 | Gen Dyn | 2496 | 2503 |
| 400 | | | Notice Rule 30(b)(6) Depositions | 09/03/03 | | | |
| 401 | | | ATK Payment history prepared by Larry Naritelli | 03/16/04 | M | 1 | 10 |
| 402 | | | Special Presentation for Alliant Techsystems | No Date | ATK | 10172 | 10209 |
| 403 | | | Source Selection Checklist | No Date | ATK | 11851 | 11851 |
| 404 | | | Certificate of Conformance | No Date | ATK | 30555 | 30562 |
| 405 | | | E-mail from Kent Holiday re: Valentec International (lost order) | No Date | ATK | 31164 | 31164 |

30

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 406 | | | National Metal Links Spreadsheet and Valentec Spreadsheet | No Date | ATK | 40419 | 40419 |
| 407 | | | Memo to Larry Smith from Jeff Tardiff | No Date | ATK | 40469 | 40469 |
| 408 | | | Letter to Rohan from Krawczyk | No Date | ATK | 42171 | 42171 |
| 409 | | | E-mail NMT Activities | No Date | ATK | 42187 | 42189 |
| 410 | | | ATK Purchase Order MD0084 - NRE | No Date | ATK | 90604 | 90626 |
| 411 | | | E-mail "Valentec Link'" | No Date | ATK | 220683 | 220695 |
| 412 | | | Future Financial Plan | No Date | ATK | 250332 | 250338 |
| 413 | | | Handwritten notes (LTR from Marcos) | No Date | ATK | 270094 | 270094 |
| 414 | | | Alliant Lake City Raw Material Instructions | No Date | ATK | 273390 | 273420 |
| 415 | | | Receiving Worksheet | No Date | ATK | 276326 | 276359 |
| 416 | | | NMT Trip Report March 7 & 8 with received by GD, AO, ATK, OSC | No Date | ATK | 280123 | 280123 |
| 417 | | | ATK Purchase Order D10268 | No Date | ATK | 280341 | 280358 |
| 418 | | | ATK Purchase Order DN0181 | No Date | ATK | 280359 | 280394 |
| 419 | | | E-mail from Finkbiner | No Date | NMT | 132 | 132 |
| 420 | | | M13 Link Review | No Date | NMT | 173 | 173 |
| 421 | | | Letter to Bob Crawford | No Date | NMT | 271 | 273 |
| 422 | | | Notes of Phone Conference | No Date | NMT | 22241 | 22241 |
| 423 | | | Invoice from ATK to Valentec International Corp. | No Date | | | |
| 424 | | | Drawing M-27 Dimensions | No Date | | | |
| 425 | | | Meeting Notes | No Date | | | |
| 426 | | | Meeting Notes | No Date | | | |
| 427 | | | Drawing M-27 Dimensions | No Date | | | |

31

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 428 | | | Valentec links measurements | No Date | | | |
| 429 | | | Letter from Jeff Tardiff | No Date | | | |
| 430 | | | Drawing | No Date | | | |
| 431 | | | Dunn & Bradstreet Report on Valentec done for Lisa Schmidt of Rolled Steel | No Date | | | |
| 432 | | | Bill to National Metal Technologies | No Date | | | |
| 433 | | | Bill to Alliant Lake City Small Caliber | No Date | | | |
| 434 | | | Bill to Alliant Lake City Small Caliber | No Date | | | |
| 435 | | | Facility Use Agreement | No Date | | | |
| 436 | | | 10 Year Manufacturing Program Between Alliant and NMT | No Date | | | |
| 437 | | | Purchase Order Additional Requirements T10365 | No Date | ATK | 11831 | 11834 |
| 438 | | | Handwritten notes HEC visit to NMT M27 Link | No Date | ATK | 40575 | 40575 |
| 439 | | | Handwritten notes | No Date | ATK | 20762 | 20838 |
| 440 | | | NMT Correspondence | No Date | ATK | 40506 | 40508 |
| 441 | | | Alliant Techsystems Inc. and Affiliates General Terms and Conditions: Fixed Price Orders | No Date | ATK | 21994 | 22001 |
| 442 | | | Handle Proprietary Ammunition Systems Operation Analysis Mar-1999 | No Date | ATK | 140444 | 140510 |
| 443 | | | U.S. Army Armament Research and Development Center: Product Specification | No Date | ATK | 21439 | 21458 |
| 444 | | | Source Selection Checklist | No Date | ATK | 11851 | 11851 |

32

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

List of Plaintiffs' Exhibits

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | PREFIX | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 445 | | | 1st Article Static Lot Inspection Report | No Date | ATK | 70417 | 70433 |
| 446 | | | Purchase orders and e-mails | No Date | AO | 280 | 332 |
| 447 | | | Receiving and Inspection Reports 2000 (Finkbiner Deposition Exhibit 154) | No Date | ATK | various | various |
| 448 | | | Exhibit 153 of the Finkbiner Deposition | | | | |

33

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 449 | | | Certificate of Conformance | 01/04/00 | | | |
| 450 | | | Quarterly Audit Review | 01/28/93 | NMT | 22116 | |
| 451 | | | Letter from Eugene R. Reda to Mr. Saputo re: Request for Quotation RW95971 | 03/20/98 | American Ordnance | 45 | 45 |
| 452 | | | Fax Cover Sheet with Handwritten not from Eugene Reda to Joseph Saputo | 04/02/98 | American Ordnance | 41 | 41 |
| 453 | | | General Dynamics Purchase Order No S-Ml-7290 C/O 2 | 06/18/98 | American Ordnance | 31 | 33 |
| 454 | | | General Dynamics Purchase Order No S-Ml-7290 | 07/14/98 | American Ordnance | 28 | 30 |
| 455 | | | Letter from Michael O'Connell to Webb Cunningham | 08/21/98 | NMT | 333 | 335 |
| 456 | | | Valentec International Visit Subject M9 Link Failure Investigation | 08/25/98 | NMT | 225 | 227 |
| 457 | | | Corrective Action Request | 08/26/98 | NMT | 104 | 104 |
| 458 | | | Master Inspection Stamp Log | 09/02/98 | NMT | 6566 | 6583 |
| 459 | | | Letter from Webb Cunningham to Phil Holman | 09/15/98 | NMT | 100 | 102 |
| 460 | | | Communication Control Record | 09/22/98 | NMT | 105 | 110 |
| 461 | | | Memo from Dave Scott to Roger McFarland re: Olin response to deficiency report | 09/22/98 | NMT | 114 | 115 |
| 462 | | | Letter from D.B. Scott to Roger McFarland and Charles Hinkle | 09/25/98 | NMT | 111 | 113 |
| 463 | | | E-mail from Michael W. O'Connell re: Contract DAAA21-93-C-0096, .50 Cal SLAP Ctg | 09/28/98 | NMT | 103 | 103 |

1

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 464 | | | Certificate of Conformance | 10/12/98 | | 1166 | 11684 |
| 465 | | | E-mail from Webb Cunningham to David Scott re: M9 Link Failure Analysis w/ metallography & microhardness | 12/10/98 | NMT | 60 | 67 |
| 466 | | | Metallurgical Investigation of 0.50 Caliber, M9 Cartridge, Metallic Belt, Link Failures | 12/11/98 | NMT | 56 | 59 |
| 467 | | | Memo from P. Robinson to A. Noud re: TSR 0752-2389: Failed M9 Links | 12/14/98 | NMT | 49 | 55 |
| 468 | | | October 21, 1999 fax to McCarthy from KR Gravatt | 10/14/99 | NMT | 26738 | 26738 |
| 469 | | | Memo to Michael L. Fulop | 10/19/99 | | | |
| 470 | | | Multi-Page document | 12/17/99 | ATK | 50698 | 50719 |
| 471 | | | Fax from Tardiff with Link Steel Pos | 01/17/00 | ATK | 21921 | 21925 |
| 472 | | | ATK Letter to Alperson (Rolled Steel) | 02/02/00 | | | |
| 473 | | | Alliant Techsystems Purchase Guarantee Certificate of Conformance | 02/25/00 | | | |
| 474 | | | Inspection Stamp Log | 02/28/00 | ATK | 240212 | 240212 |
| 475 | | | ATK Letter to Tardiff re: PO LC001 Wrt delivery dates | 03/03/00 | | | |
| 476 | | | Invoice | 04/20/00 | | | |
| 477 | | | Certificate of Conformance | 05/04/00 | NMT | 20984 | 20975 |
| 478 | | | Certificate of Conformance | 05/05/00 | | | |
| 479 | | | Letter to Ed Carpenter from Mr. Finkbiner | 05/25/00 | NMT | 22179 | 22182 |
| 480 | | | Certificate of Conformance | 06/02/00 | | | |
| 481 | | | Certificate of Conformance | 06/09/00 | | | |
| 482 | | | Certificate of Conformance | 06/16/00 | | | |
| 483 | | | E-mail from David Crites to Larry | 06/22/00 | ATK | 42178 | 42178 |

2

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 484 | | | Certificate of Conformance | 06/23/00 | | | |
| 485 | | | Certificate of Conformance | 06/30/00 | | | |
| 486 | | | Letter from Pat Moore to Angelo Catani | 07/06/00 | NMT | 962 | 963 |
| 487 | | | Certificate of Conformance | 07/14/00 | NMT | 21006 | 21005 |
| 488 | | | Certificate of Conformance | 07/14/00 | NMT | 21006 | 21005 |
| 489 | | | E-mail to Mr. Tardiff from John Finkbiner | 07/20/00 | NMT | 12803 | 12803 |
| 490 | | | Lake City Small Caliber Ammunition Valentec Links Acquisition | 07/20/00 | ATK | 60173 | 60180 |
| 491 | | | Certificate of Conformance | 07/21/00 | | | |
| 492 | | | Letter to Nels R. Leutwiler | 07/25/00 | | | |
| 493 | | | Letter from Pat Moore to Angelo Catani | 07/28/00 | NMT | 964 | 966 |
| 494 | | | Certificate of Conformance | 07/28/00 | | | |
| 495 | | | Certificate of Conformance | 08/04/00 | | | |
| 496 | | | E-mail letter from Sue Bartle to Joe Saputo re: Request for Quote M16A2 Link 40MM | 08/04/00 | American Ordnance | 184 | 185 |
| 497 | | | E-mail from Sue Bartle to Joe Saputo, et al. re: M16A2 Links - QTY 2mil Pricing | 08/07/00 | American Ordnance | 181 | 181 |
| 498 | | | E-mail to Jeff Tardiff from Larry Smith | 08/17/00 | ATK | 42190 | 42190 |
| 499 | | | Certificate of Conformance | 08/17/00 | | | |
| 500 | | | Memo to Jeff Tardiff from Mike Morcos | 08/23/00 | NMT | 25405 | 25405 |
| 501 | | | August 28, 2000 letter to Dave Crites from Michael McCarthy | 08/28/00 | NMT | 16175 | 16175 |
| 502 | | | Certificate of Conformance | 09/06/00 | NMT | 20770 | 20777 |
| 503 | | | Certificate of Conformance | 09/06/00 | NMT | 21019 | 21018 |
| 504 | | | Certificate of Conformance | 09/08/00 | NMT | 20761 | 20768 |
| 505 | | | Receiving Worksheet | 09/19/00 | ATK | 30312 | 30326 |
| 506 | | | Quarterly Report for Quarter Ending | 09/30/00 | NMT | 466 | 484 |

3

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 507 | | | Certificate of Conformance | 10/02/00 | NMT | 20779 | 20787 |
| 508 | | | Videotapes Sworn Statement of James Biddlecome | 10/06/00 | ATK | 241600 | 241654 |
| 509 | | | Letter from Lonnie B. Alperson to National Manufacturing Tech., Inc. | 10/08/00 | RS | 43 | 43 |
| 510 | | | Certificate of Conformance | 10/13/00 | NMT | 21034 | 21033 |
| 511 | | | Fax cover sheet from Patrick W. Moore to Larwin and attachmnet | 10/19/00 | RS | 46 | 47 |
| 512 | | | Certificate of Conformance | 10/24/00 | NMT | 21060 | 6583 |
| 513 | | | Letter from Lonnie B. Alperson to National Manufacturing Tech., Inc. | 10/27/00 | RS | 44 | 44 |
| 514 | | | Letter from Lonnie Alperson | 11/14/00 | ATK | 40887 | 40889 |
| 515 | | | E-mail to Dimitroff, Hawks re: NMT "Raid" | 11/21/00 | ATK | 10897 | 10897 |
| 516 | | | E-mail from Bill Noon to Dimitroff and Hawks | 11/21/00 | ATK | 10897 | |
| 517 | | | E-mail from David Crites to Larry | 11/21/00 | ATK | 21465 | 21465 |
| 518 | | | E-mail from David Crites to Schaub, Burton, Smith, Noon, Dooley | 11/21/00 | ATK | 21465 | 21465 |
| 519 | | | E-mail from Crites re: NMT Links | 11/22/00 | ATK | 100682 | 100682 |
| 520 | | | NMT Report | 11/26/00 | ATK | 50164 | 50164 |
| 521 | | | American Ordnance Purchase Orders | 12/04/00 | American Ordnance | 162 | 168 |
| 522 | | | E-mail from Neubauer re: NMT Link and Ctg. Case Action Plan (link availability from NMT) | 12/17/00 | ATK | 21272 | 21273 |
| 523 | | | E-mail to Neubauer, Delaney from Dimitroff | 12/20/00 | ATK | 11061 | 11061 |

4

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 524 | | | E-mail from Dimitroff re: 25mm Links (testing the links) | 12/20/00 | ATK | 11548 | 11562 |
| 525 | | | Quarterly Report for Quarter Ending | 12/31/00 | NMT | 485 | 507 |
| 526 | | | E-mail to Crites from Dooley | 01/04/01 | ATK | 100237 | 100237 |
| 527 | | | E-mail from Dooley re: NMT Channel Edge Guards | 01/11/01 | ATK | 100243 | 100243 |
| 528 | | | E-mail to Yeakley re: 25MM M28 Links for Turkey Commercial contract | 01/18/01 | ATK | 10928 | 10930 |
| 529 | | | E-mail to Hawks re: NMT Payment, PO T10365 | 01/19/01 | ATK | 11775 | 11775 |
| 530 | | | E-mail to Hawks re: Debit against PO T10365 | 01/19/01 | ATK | 21783 | 21783 |
| 531 | | | E-mail to Dilley and Neubauer from Dimitroff | 01/23/01 | ATK | 10011 | 10034 |
| 532 | | | Letter to Pat Moore from David Crites | 02/01/01 | ATK | 31424 | 3124 |
| 533 | | | Memo from Glen Dell, Wayne Stabile and Steven Sadler to Investment Committee, Maple Wood Partners (Confidential) | 02/12/01 | | | |
| 534 | | | Fax Cover Sheet to Kent Holiday from Bill Grivas | 02/15/01 | ATK | 42118 | 42127 |
| 535 | | | Correspondence | 02/21/01 | | | |
| 536 | | | Letter from Patrick Moore to Lyle Jensen (Confidential) | 02/21/01 | | | |
| 537 | | | E-mail from Webb with attachment Links Supply Status and Risk Mitigation | 03/02/01 | ATK | 221062 | 221068 |
| 538 | | | Lender Access Agreement | 03/06/01 | ATK | 60394 | 60397 |
| 539 | | | Handwritten notes | 03/07/01 | ATK | 110001 | 110002 |

5

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 540 | | | Facility Use Agreement Bewteen Alliant Lake City Small Caliber Ammunition Company LLC and Valentec Wells, LLC | 03/08/01 | ATK | 60601 | 60692 |
| 541 | | | Handwritten notes | 03/08/01 | ATK | 42089 | 42098 |
| 542 | | | E-mail from Bill Noon to Steve Neubauer re: M28 Links | 03/09/01 | ATK | 100261 | 100262 |
| 543 | | | M28 Link Transition Plan | 03/12/01 | ATK | 10062 | 10067 |
| 544 | | | E-mail from Darlene Smith to Kent Holiday, et al. | 03/20/01 | ATK | 22224 | 22225 |
| 545 | | | Fax Mike McCann to Angelo Catani re: info about NMT | 03/21/01 | ATK | 11243 | 11243 |
| 546 | | | E-mail from David Crites to Alan Parish and Susan Smith re: M28 Link Phosphate | 03/22/01 | ATK | 90383 | 90384 |
| 547 | | | Letter to Paul Miller from Pat Moore re: demanding payment | 03/23/01 | ATK | 50116 | 50117 |
| 548 | | | E-mail with attachment from Steve Farley to Susan Smith and Alan Parish | 03/23/01 | ATK | 90188 | 90190 |
| 549 | | | Letter from D.H. Crites to Pat Moore re: Purchase Order DN0155 | 03/23/01 | ATK | 31094 | 31094 |
| 550 | | | Letter from Pat Moore to Paul Miller re: demand for payment | 03/23/01 | ATK | 11275 | 11276 |
| 551 | | | Letter from Pat Moore to Paul Miller re: demand for payment with handwritten notes | 03/23/01 | ATK | 31103 | 31103 |
| 552 | | | Letter from Patrick Moore to D.H. Crites | 03/26/01 | ATK | 30795 | 30796 |
| 553 | | | E-mail from Holiday with Attachment (Valentec Links Transition) | 03/28/01 | ATK | 221033 | 221041 |

6

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 554 | | | Letter from Dale Dimitroff to Comander US Army Mike Ellis re: Test Report: Low Hardness M28 Links | 03/28/01 | ATK | 10159 | 10167 |
| 555 | | | Invoice to Valentec from ATK | 03/28/01 | ATK | 40929 | 40929 |
| 556 | | | Outstanding Payment/Collection Issues | 04/02/01 | ATK | 10079 | 10079 |
| 557 | | | ATK (Draft) Response to 3/23/01 Moore Letter | 04/02/01 | ATK | 21900 | 21902 |
| 558 | | | Letter from ATK to Pat Moore re: National Manufacturing Technologies, Inc. (NMT) letter dated March 23, 2001 | 04/02/01 | ATK | 21900 | 21902 |
| 559 | | | Requirements Contract | 04/02/01 | ATK | 60701 | 60745 |
| 560 | | | E-mail from Jim Bourdlais to Kerry Bricker and Ed Boswton re: Links Agreement | 04/02/01 | ATK | 221031 | 221029 |
| 561 | | | ATK (Draft) Response to 3/23/01 Moore Letter | 04/03/01 | ATK | 11271 | 11274 |
| 562 | | | ATK (Draft) Response to 3/23/01 Moore Letter - Vlahakis signature line; handwritten "To: B. Noon, D. Dimitroff, J. McCusker, S.Neubauer" | 04/05/01 | ATK | 11236 | 11239 |
| 563 | | | ATK (Draft) Response to 3/23/01 Moore Letter | 04/05/01 | ATK | 11277 | 11282 |
| 564 | | | ATK (Draft) Response to 3/23/01 Moore Letter | 04/05/01 | ATK | 70894 | 40898 |
| 565 | | | Document to Comtel BOD from Lyle Jensen re: Project SDE | 04/23/01 | | | |

7

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.                              CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 566 | | | E-mail from David Crites to Steve Neubauer and Mark DeYoung re: M28 Link Status | 04/25/01 | ATK | 241508 | 241509 |
| 567 | | | Army letter to ATK re: ATK e-mail of May 24, 2001, Subject Link Status | 05/03/01 | ATK | 220957 | 220959 |
| 568 | | | E-mail from Steve Farley to David Crites re: Lot 069 Links at NMT | 05/06/01 | ATK | 90405 | 90405 |
| 569 | | | Letter from Larry Smith to John Wilson re: Termination for Default Notice | 05/07/01 | NMT | 302 | 303 |
| 570 | | | Letter from Patrick W. Moore to Nick G. Vlahakis | 05/09/01 | ATK | 50068 | 50069 |
| 571 | | | Letter from Patrick W. Moore to Larry Smith | 05/11/01 | NMT | 304 | 304 |
| 572 | | | Letter from Department of Army to Alliant Techsystems re: Link Status e-mail | 05/30/01 | ATK | 220888 | 220890 |
| 573 | | | E-mail from David Crites to Susan Smith, et al. | 06/18/01 | ATK | 90434 | 90435 |
| 574 | | | Letter from Mark DeYoung to Department of the Army Mark Haldeman | 06/20/01 | ATK | 60080 | 60081 |
| 575 | | | E-mail from Alan Parish to David Crites re: Daily Calls F/M28 Link | 06/27/01 | ATK | 100323 | 100326 |
| 576 | | | Letter from J.B. Finkbiner to Brian Menezes re: past due deliveries for purchase order C01321, C02353, and C02355 | 07/02/01 | ATK | 60130 | 60131 |
| 577 | | | E-mail from Nick Vlahakis to Mark DeYoung re: Links Update for July 6, 2001 | 07/08/01 | ATK | 220776 | 220780 |

8

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 578 | | | E-mail from Mark DeYoung to Jay Tibbets re: Valentec Wells Links Issue | 07/10/01 | ATK | 220738 | 220738 |
| 579 | | | E-mail from Steve Neubauer to David Crites, et al. re: Use of the Remainder of Lot 68 | 07/11/01 | ATK | 11093 | 11095 |
| 580 | | | E-mail from Steve Neubauer to David Crites, et al. re: Lot 068 Links | 07/11/01 | ATK | 90480 | 90481 |
| 581 | | | E-mail from Steve Farley to Ben Penn re: Lot 068 Links | 07/11/01 | ATK | 90477 | 90478 |
| 582 | | | E-mail from Steve Neubauer to Ken Sarkela, et al. | 07/12/01 | ATK | 11121 | 11122 |
| 583 | | | E-mail from Sandra Murphy to Bruce Webb re: M9Links - remaining balance at depot - Send them to LCAAP Please | 07/12/01 | ATK | 220727 | 220729 |
| 584 | | | E-mail from Ron Alberto to Eric Sheperd, et al. re: DAE support to LCAAP | 07/12/01 | ATK | 220726 | 220726 |
| 585 | | | E-mail from Steve Farley to Susan Smith re: Move of tooling and gaging | 07/17/01 | ATK | 100309 | 100309 |
| 586 | | | E-mail from Steve Neubauer to Susan Smith et al. re: Rescission of 12 July 2001 Inspection Guidance Pertaining to NMT's M28 Link Lot NMT00J005-068 | 07/17/01 | ATK | 11132 | 11133 |
| 587 | | | E-mail from Kent Holiday to Bruce Webb re: ATK Links Assessment power point | 07/17/01 | ATK | 220700 | 220716 |

9

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 588 | | | E-mail from Steve Farley to Alan Parish et al. re: Rescission of 12 July 2001 Inspection Guidance Pertaining to NMT's M28 Link Lot NMT00J005-068 | 07/18/01 | | 100310 | 100312 |
| 589 | | | E-mail from David Crites to Dave Kinder, et al. re: LW 30 Ammo Strip tooling and gages | 07/19/01 | ATK | 100071 | 100071 |
| 590 | | | E-mail from Bruce Webb to David Crites, et al. | 07/23/01 | ATK | 220639 | 220658 |
| 591 | | | E-mail from David Crites to Randy Wisian re: Lot 068 M28 Links | 07/23/01 | ATK | 100426 | 100428 |
| 592 | | | Amendment of Solicitation/Modification of Contract | 07/23/01 | ATK | 162285 | 162290 |
| 593 | | | E-mail from Kent Holiday to Eric Shepherd re: link Cost Analysis | 07/26/01 | ATK | 220627 | 220638 |
| 594 | | | Letter from Kent Holiday to Brian Menezes | 07/30/01 | ATK | 60532 | 60532 |
| 595 | | | E-mail from Webb re: Links and Meeting with IMI at Mpls. | 07/30/01 | ATK | 220586 | 220587 |
| 596 | | | Letter from Kent Holiday to Brian Menezes | 07/30/01 | ATK | 60532 | 60532 |
| 597 | | | E-mail from Brian Menezes to Kent Holiday | 08/03/01 | ATK | 60082 | 60082 |
| 598 | | | Letter from Menezes re: Valentec's needs | 08/06/01 | ATK | 60319 | 60320 |
| 599 | | | Letter from Brian Menezes to Mark DeYoung | 08/06/01 | ATK | 60319 | 60320 |
| 600 | | | Letter from Brian Menezes to Mark DeYoung | 08/06/01 | ATK | 60319 | 60320 |

10

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.                    CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 601 | | | Agreement Between Alliant Lake City Small Caliber Ammunition Company and Valentec Wells | 08/10/01 | ATK | 60181 | 60192 |
| 602 | | | Facility Use Agreement Bewteen Alliant Lake City Small Caliber Ammunition Company LLC and Valentec Wells, LLC Addendum 1 to Exhibit D | 08/10/01 | ATK | 60699 | 60699 |
| 603 | | | E-mail from David Crites to Randy Wisian re: NMT trip Report 8/8/01 | 08/14/01 | ATK | 100061 | 100064 |
| 604 | | | Letter from Patrick Moore to Gen. Wade H. McManus, Jr. | 08/15/01 | ATK | 21498 | 30566 |
| 605 | | | ATK Fax from Holiday to Hitesman with copy of letter from NMT to Gen. McManus | 08/16/01 | ATK | 30564 | 30566 |
| 606 | | | E-mail from McManus to Vlahakis re: NMT and Future Events | 08/17/01 | | 1911 | 1912 |
| 607 | | | Fax Cover sheet from Mark DeYoung to Deb Moeschl re: Letter re: letter from NMT | 08/20/01 | ATK | 50020 | 50022 |
| 608 | | | E-mail from David Crites to Sharon Dilley re: NMT | 08/21/01 | ATK | 100057 | 21802 |
| 609 | | | E-mail from Mark DeYoung to David Crites re: NMT Media Talking Points | 08/23/01 | ATK | 241526 | 241531 |
| 610 | | | Links Sales Analysis | 08/24/01 | ATK | 202663 | 202674 |
| 611 | | | Lake City Small Caliber Ammunition Valentec Links Acquisition | 08/28/01 | ATK | 202721 | 202732 |
| 612 | | | Valentec Wells Presentation to General John G. Coburn Army Materials Command | 09/05/01 | ATK | 60010 | 60023 |

11

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 613 | | | Weak Links Supply Must Be Fixed ATK Lake City | 09/05/01 | ATK | 202248 | 202254 |
| 614 | | | E-mail from Bill Noon to David Crites and Steve Neubauer | 09/06/01 | ATK | 22099 | 22100 |
| 615 | | | Asset Purchase Agreement | 09/16/01 | ATK | 60441 | 60467 |
| 616 | | | Amendement to Asset Purchase Agreement | 09/18/01 | ATK | 60431 | 60432 |
| 617 | | | American Ordnance and Valentec Release | 09/21/01 | American Ordnance | 154 | 154 |
| 618 | | | Hand written Letter | 09/26/01 | ATK | 60429 | 60429 |
| 619 | | | Proprietary Information Exchange Agreement GG Green Enterprises, Inc. Also Doing Business as Southwest Greene International, Inc. and Alliant Lake City Small Caliber Ammunition Company, LLC | 09/27/01 | ATK | 200541 | 200545 |
| 620 | | | E-mail from Nick Vlahakis to Mark DeYoung, et al. re: Acquisition of Links Business | 09/29/01 | ATK | 211725 | 211726 |
| 621 | | | Fax Transmittal from C. Greene to John Finkbiner re: Proposal | 10/08/01 | ATK | 202623 | 202625 |
| 622 | | | Letter from Craig Green to John Finkbiner | 10/08/01 | ATK | 200555 | 200558 |
| 623 | | | DRAFT (as of 041700Oct01) Lake City Army Ammunition Plant Operations Support Command | 10/10/01 | ATK | 202615 | 202615 |
| 624 | | | American Ordnance Purchase Orders | 10/11/01 | American Ordnance | 155 | 161 |
| 625 | | | Letter from J.A. Bourdlais to Department of the Army | 10/15/01 | ATK | 211700 | 211702 |

12

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 626 | | | Letter from Department of the Army to Sharon Dilley | 10/26/01 | ATK | 70022 | 70023 |
| 627 | | | Purchase Orders | 10/29/01 | ATK | 200504 | 200508 |
| 628 | | | Purchase Orders | 10/29/01 | ATK | 200499 | 200502 |
| 629 | | | Purchase Order C04706 Alteration 8 | 10/29/01 | ATK | 200481 | 200495 |
| 630 | | | Amendment of Solicitation/Modification of Contract | 01/03/02 | ATK | 162297 | 162302 |
| 631 | | | Amendment of Solicitation/Modification of Contract | 01/31/02 | ATK | 162303 | 162305 |
| 632 | | | E-mail from Michael McCann to Pat Nolan re: Links Issue | 03/11/02 | ATK | 211659 | 211659 |
| 633 | | | E-mail from Larry Smith to Craig Greene re: GG Green Support | 04/01/02 | ATK | 200403 | 200403 |
| 634 | | | M27 Link Interim Report of ATK/LCAAP Quality Plan & In-Process Inspection Plan Review | 04/22/02 | ATK | 200394 | 200395 |
| 635 | | | Amendment of Solicitation/Modification of Contract | 04/29/02 | ATK | 162344 | 162347 |
| 636 | | | E-mail from Brad Lett to James Fine | 05/23/02 | American Ordnance | 570 | 576 |
| 637 | | | Facsimile from Matthew S. Walker to Dean Manor and Pat Moore re: Open Invoices Dispute | 05/24/02 | ATK | 70198 | 70209 |
| 638 | | | E-mail from Dee Linda Rohrer to Diane Goold re: Links Deliveries | 05/28/02 | ATK | 220273 | 220274 |

13

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 639 | | | M27 Link Interim Report of ATK/LCAAP Quality Plan & In-Process Inspection Plan Review | 05/29/02 | ATK | 200668 | 200670 |
| 640 | | | ATK Lake City Small Caliber Ammunition Company Link Production Status | 05/29/02 | ATK | 220218 | 220230 |
| 641 | | | Alliant Techsystems Lake City Army Ammunition Plant Project Work Authorization | 06/01/02 | ATK | 200474 | 200474 |
| 642 | | | E-mail from Dooley with attachment NMT Invoice Explanation | 06/11/02 | ATK | 100400 | 100482 |
| 643 | | | E-mail from David Crites to Kristine McMahon re: NMTBYPOO602 with attachment | 06/11/02 | ATK | 100483 | 100498 |
| 644 | | | E-mail from Marvetta Dooley to David Crites re: NMT Document | 06/11/02 | ATK | 100499 | 100504 |
| 645 | | | Letter from Jerry L. Holland to Jim Krawczyk | 06/12/02 | American Ordnance | 498 | 512 |
| 646 | | | E-mail from Kast with attachment re: NMT checks | 06/13/02 | ATK | 100480 | 100482 |
| 647 | | | E-mail from Gloria Kast to David Crites re: NMT Checks | 06/13/02 | ATK | 100480 | 100482 |
| 648 | | | E-mail from Kent Holliday to Larry Smith and Jeff Vosburgh | 06/21/02 | ATK | 200503 | 200503 |
| 649 | | | E-mail from Kent Holiday to Larry Smith and Jeff Vosburgh re: Greene Consulting Purchase Order no. LCO C04706 | 06/21/02 | ATK | 200503 | 200503 |

14

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 650 | | | E-mail from Larry Smith to Craig Greene re: Green Consulting Contract and 10 Rd Clip extension | | | | |
| 651 | | | E-mail from Jim Krawczyk to Bruce Webb re: Valentec Links | 07/11/02 | ATK | 200497 | 200497 |
| 652 | | | E-mail from Larry Smith to Jeff Vosburgh re: GG Greene Support | 07/12/02 | ATK | 200925 | 200927 |
| 653 | | | E-mail from Thomas Hardin to Jim Taylor re: Revised RFQ | 07/24/02 | ATK | 200593 | 200592 |
| 654 | | | Letter Greg Goff to Alliant Ammunition & Powder Co. Charles Arehart | 08/12/02 | American Ordnance | 248 | 248 |
| 655 | | | Letter from Greg Goff to K.R. Gravatt re: M28 25mm Link Quotation | 08/16/02 | ATK | 122368 | 122369 |
| 656 | | | General Dynamics Ordnance and Tactical Systems Blanket Order | 08/16/02 | ATK | 122371 | 122371 |
| 657 | | | Letter from James G. Taylor to T. Hardin re: 40mm M16A2 Link Revised Quotation | 09/23/02 | ATK | 200480 | 200479 |
| 658 | | | Letter from Greg Goff to Charles Arehart Alliant Ammunition & Powder re: M28 25mm Link Revised Quotation | 09/23/02 | American Ordnance | 241 | 242 |
| 659 | | | Receiving Inspections | 11/08/02 | ATK | 122360 | 122360 |
| 660 | | | Letter from James G. Taylor to T. Hardin re: 40mm M16A2 Link Quotation | 12/16/02 | | | |
| 661 | | | E-mail from Thomas Hardin to Jim Taylor re: Request for Quotation M16A2 links | 12/20/02 | American Ordnance | 237 | 238 |
| 662 | | | E-mail from Neubauer to Noon re: Link Test Charges | 01/09/03 | American Ordnance | 245 | 245 |
| | | | | 01/19/03 | ATK | 10924 | 10924 |

15

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 663 | | | Letter from James G. Taylor to T. Hardin re: 40mm M16A2 Link Quotation | 01/22/03 | American Ordnance | 235 | 236 |
| 664 | | | E-mail from Nelson to Neubauer re: Unit Cost by Program & Round | 02/07/03 | ATK | 162489 | 162507 |
| 665 | | | Certificate of Conformance | 02/07/03 | | | |
| 666 | | | E-mail from Cindy Nelson to Dave Rathe re: Unit Cost by Program & Round | 02/10/03 | ATK | 162489 | 162507 |
| 667 | | | 4th Quarter AFY03 Estimate at Completion Review | 03/05/03 | ATK | 150987 | 151003 |
| 668 | | | E-mail from Marty Cates to Orest Hrycak re: Photos of links | 04/02/03 | NMT | 24 | 29 |
| 669 | | | E-mail from Alice Boulds to Steve Brunaugh re: Link Inventory | 05/07/03 | NMT | 32 | 33 |
| 670 | | | Valentec Acquisition Discounted Cash Flow Analysis | 05/21/03 | ATK | 220471 | 220480 |
| 671 | | | E-mail from Alice Boulds to Al Noud, et al. re: Defective GFM, M9 Links | 05/23/03 | NMT | 34 | 35 |
| 672 | | | Videotaped Sworn Statement of James Biddlecome | 06/03/03 | ATK | 241600 | 241654 |
| 673 | | | Certificate of Conformance | 06/03/03 | | | |
| 674 | | | Certificate of Conformance | 07/02/03 | American Ordnance | 903 | 922 |
| 675 | | | Subpoena in a Civil Case for Kenneth Whiteberg | 09/04/03 | | 90-1 | 90-7 |
| 676 | | | Subpoena to James Biddlecome | 09/12/03 | | | |
| 677 | | | Certificate of Conformance | 09/23/03 | American Ordnance | 731 | 759 |

16

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---------|-------------|---------------|-------------|------|--------|-----------|-----------|
| 678 | | | Certificate of Conformance | 09/23/03 | American Ordnance | 760 | 781 |
| 679 | | | Scrap Material | 09/27/03 | NMT | 22436 | 22436 |
| 680 | | | Document listing workers' title and job duties, first name Ed Carpenter | 10/05/03 | | | |
| 681 | | | Certificate of Conformance | 10/20/03 | NMT | 21047 | 21046 |
| 682 | | | ATK Conventional Munitions Group Op Analysis | 3/00/01 | ATK | 140674 | 140717 |
| 683 | | | E-mail to Neubauer re: Links (sharing with GD) | 8/00/01 | ATK | 21796 | 21796 |
| 684 | | | 2000 Annual Report | No Date | ATK | 21558 | 21617 |
| 685 | | | NMT Accounting Sheet | No Date | ATK | 30930 | 30931 |
| 686 | | | Fax Cover Sheet to Kent Holiday from Bill Grivas | No Date | ATK | 42137 | 42142 |
| 687 | | | Daily Record of Events | No Date | ATK | 50152 | 50162 |
| 688 | | | NMT Report | No Date | ATK | 50164 | 50165 |
| 689 | | | Breakdown of PO/Check/Invoice | No Date | ATK | 100351 | 100355 |
| 690 | | | Raw Material Lots Received Reports | No Date | ATK | 110074 | 110075 |
| 691 | | | Lake City Small Caliber Ammunition | No Date | ATK | 220526 | 220533 |
| 692 | | | Spreadsheet | No Date | ATK | 260459 | 260459 |
| 693 | | | Bill to Alliant Techsystems | No Date | | | |
| 694 | | | Certificate of Conformance | No Date | | | |
| 695 | | | E-mail "Talon M13 Links" | No Date | | | |
| 696 | | | E-mail "Talon M9 Link" | No Date | | | |
| 697 | | | E-mail "Links" | No Date | | | |
| 698 | | | Raw Material Inspection Report | No Date | | | |
| 699 | | | E-mail "Hole Configuration" | No Date | | | |

17

National Metal Technologies, et al. v. Alliant Techsystems, Inc., et al.

CASE NO. 02 CV 00473 JAH (BLM)

Exhibits Plaintiff May Use at Trial

| EX. NO. | DATE MARKED | DATE ADMITTED | DESCRIPTION | DATE | Prefix | BEG BATES | END BATES |
|---|---|---|---|---|---|---|---|
| 700 | | | Facility Use Agreement Bewteen Alliant Lake City Small Caliber Ammunition Company LLC and Valentec Wells, LLC | | | | |
| 701 | | | Lake City Links Pricing 8 year supply agreement | No Date | ATK | 50495 | 50587 |
| 702 | | | As of the end of May 2001, Valentec Wells was past due | No Date | ATK | 110197 | 110197 |
| 703 | | | Links Summary (Tables with Suppliers) | No Date | ATK | 40022 | 40022 |
| 704 | | | American Ordnance documents - General Dynamics Contracts/Lockheed Martin Contracts | No Date | American Ordnance | 40649 | 40649 |
| 705 | | | Abstract of Offers Lockheed Martin | No Date | American Ordnance | 48 | 49 |
| 706 | | | General Dynamics Request for Quotation | No Date | American Ordnance | 58 | 59 |
| 707 | | | Valentec and American Ordnance documents | No Date | American Ordnance | 98 | 107 |
| 708 | | | American Ordnance Purchase Orders | No Date | American Ordnance | 108 | 141 |
| 709 | | | Supplier Evaluation Valentec International Corporation M16A2 Link 40MM | No Date | American Ordnance | 191 | 194 |
| 710 | | | American Ordnance documents - Purchase orders | No Date | American Ordnance | 257 | 268 |
| 711 | | | E-mails | No Date | NMT | 738 | 853 |

18

## PROOF OF SERVICE

*NATIONAL METAL TECHNOLOGIES, INC., vs. ALLIANT TECHSYSTEMS, INC., et al.*
CASE NO.: 02 CV 00473 JAH (BLM

I, the undersigned, declare:

I am employed in the County of San Diego, State of California. My business address is: 550 West C Street, Suite 1600, San Diego, CA 92101. I am over the age of 18 years and I am not a party to this action.

That on October 7, 2004, I served the following document(s) entitled: **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on ALL INTERESTED PARTIES in this action:

**SEE ATTACHED SERVICE LIST**

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to **Fed Ex** for delivery to the above address(es).

☐ **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown on the attached service list.

☐ **BY PERSONAL SERVICE:** I had such envelope delivered by hand where indicated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 7, 2004, at San Diego, California.


ANITA VILLANUEVA

i

02 CV 00473 JAH (BLM)

NMT
Case No.: 02 CV 00473 JAH (BLM)
Service List


**PLAINTIFFS' COUNSEL**

Joseph Goldberg
FREEDMAN, BOYD, DANIELS,
 HOLLANDER, GOLDBERG & CLINE, P.A.
20 First Plaza, Ste. 700
Albuquerque, NM  87102
Telephone: (505) 842-9960
Facsimile:  (505) 842-1925
*Attorneys for Plaintiffs National Metal
Technologies, Inc and National Manufacturing
Technologies, Inc.*

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
725 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Telephone: (612) 333-8844
Facsimile:  (612) 339-6622
*Attorneys for Plaintiffs National Metal
Technologies, Inc and National Manufacturing
Technologies, Inc.*

Dennis Stewart
Stephanie Dieringer
Bridget Fogarty Gramme
HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone: (619) 338-1133
Facsimile:  (619) 338-1139
*Attorneys for Plaintiffs National Metal
Technologies, Inc and National Manufacturing
Technologies, Inc.*

Donald G. Rez
SULLIVAN, HILL, LEWIN, REZ & ENGEL
550 West C Street, Suite 1500
San Diego, CA  92101-3540
Telephone: (619) 233-4100
Facsimile:  (619) 231-4372
*Attorneys for Plaintiffs National Metal
Technologies, Inc and National Manufacturing
Technologies, Inc.*


**DEFENSE COUNSEL**

Jeffrey A. LeVee
Jason C. Murray
Eric P. Enson
JONES DAY
555 W. Fifth Street, Suite 4600
Los Angeles, CA  90013-1025
Telephone: (213) 489-3939
Facsimile:  (213) 243-2539
*Attorneys for Defendants Alliant Techsystems,
Inc., Alliant Ammunition Powder Company
LLC, Alliant Ammunition Systems, LLC,
Alliant Lake City Small Caliber Ammunition
Company LLC, Alliant Defense LLC*